251 So.2d 685 (1971)
STERLING VILLAGE CONDOMINIUM, INC., a Florida Corporation, Appellant,
v.
Edward V. BREITENBACH and Anna Mae Breitenbach, His Wife, Appellees.
No. 70-514.
District Court of Appeal of Florida, Fourth District.
May 14, 1971.
Rehearing Denied July 15, 1971.
Richard B. Burk, of Scott, Burk, Royce & Kern, Palm Beach, for appellant.
*686 Carl M. Collier, Palm Beach, for appellees.
DRIVER, B.J., Associate Judge.
Appellant, Sterling Village Condominium, Inc., plaintiff below, is the managing corporation for Sterling Village Condominiums. The officers and directors of appellant corporation are drawn from unit owners in the condominium. Appellees, Edward V. Breitenbach and Anna Mae Breitenbach, his wife, were the defendants below. Hereinafter the parties will be referred to as plaintiff and defendants, in accordance with their respective positions before the trial court.
Defendants, Breitenbachs, own two units in Sterling Village Condominiums. Defendants' units, in common with other units in the condominium complex, had as a part thereof screen enclosures, or porches. Mr. and Mrs. Breitenbach attempted to obtain consent from the plaintiff to replace the screen with glass jalousies. Consent was denied, notwithstanding which defendants proceeded to remove the screen from the enclosures and substitute glass jalousies in its stead.
Plaintiff filed suit against defendants, seeking a mandatory injunction to require defendants to remove the glass jalousies and return the enclosures to their original screened condition. Defendants answered, and the case was tried to the court without jury. The court denied the mandatory injunction on the grounds that the substitution of glass jalousies for screen did not amount to a "substantial" alteration or addition and that, consequently, no consent was required to make the change. This appeal followed.
The use, management, and control of the units in Sterling Village Condominiums are controlled by Florida Statute 711, the Florida Condominium Act, and by the Declaration of Condominiums of Sterling Village Condominium, Inc. Defendants bound themselves by the Declaration of Condominiums when they purchased the two units owned by them in the complex. Florida Statutes, Chapter 711.13, F.S.A. provides inter alia:
"2. There shall be no material alteration or substantial addition to the common elements except in a manner provided in the declaration."
The pertinent provisions of the Declaration of Condominiums of Sterling Village declare:
"ARTICLE XIV, Paragraph C.
Each unit owner agrees as follows:
2. Not to make or cause to be made any structural addition or alteration to his unit, or to the common elements, without prior consent of the Association. * * *
3. To make no alteration, decoration, repair, replacement, or change of the common elements, or to any outside or exterior portion of the building whether within a unit or part of the common elements; * * *." (Emphasis supplied)
"ARTICLE XIV, Paragraph E.
The Association shall determine the exterior color scheme of the building and all exteriors, and shall be responsible for the maintenance thereof, and no owner shall paint an exterior wall, door, window, or balcony, or any exterior surface or replace anything thereon or affixed thereto, without the written consent of the Association." (Emphasis supplied)
"ARTICLE XV.
Where the limited common elements consist of screened porches, the condominium unit owner or owners who have the right to exclusive use of said screened porch shall be responsible for the maintenance, care, preservation and replacement of the screening on said screened porch at his own cost and expense. * *"

*687 "ARTICLE XV, LIMITED COMMON ELEMENTS.
* * * Those areas reserved for the use of a certain unit owner or certain unit owners to the exclusion of other unit owners are designated limited common elements. * * *"
An alteration, as applied to buildings, is:
"To vary; change; or make different; to change from one form or state to another without destroying identity; a change within the superficial elements of an existing structure." (Black's Law Dictionary, Fourth Edition, 1951)
An addition, by contrast, is:
"To add to the depth or height, or to the interior accomodations of a building." (Black's Law Dictionary, supra)
The use of screens and glass jalousies is so widespread in Florida that their respective characteristics and properties are common knowledge of which we take judicial notice.
The screen enclosures are defined by the Declaration of Condominiums as being "limited common elements". We hold under the above definitions of alteration and addition that removal of wire screening and substituting glass jalousies in its stead is an addition or alteration to the common elements. The pivotal issue to be resolved, then, is: Were the additions or alterations "substantial" or "Material"?
"Substantial" is:
"Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable; (Black's Law Dictionary, Fourth Edition 1951)
* * * Something worthwhile as distinguished from something without value or merely nominal." (Black's Law Dictionary, Fourth Edition 1951)
"Material" is:
"That which is important; that which has influence or effect." (Black's Law Dictionary, Fourth Edition 1951)
The just quoted definition of "material" is taken from cases dealing with legal instruments but no definition of the term as applied to buildings was cited in the Briefs, and independent research has failed to find a definition of the term as applicable to buildings.
It is to be assumed that the term "material" was used in the Declaration of Condominiums as having the meaning attached to it in everyday parlance by men and women of ordinary learning and knowledge. We hold that as applied to buildings the term "material alteration or addition" means to palpably or perceptively vary or change the form, shape, elements or specifications of a building from its original design or plan, or existing condition, in such a manner as to appreciably affect or influence its function, use, or appearance.
Patently, the substitution of glass jalousies for wire screening is a change in the elements and specifications of the enclosures as they were originally designed or existing at the time of the change. It is equally apparent that this change affects and influences the function, use, and appearance of the building. Screen keeps out neither rain, dust, nor wind; jalousies, on the other hand, convert an area otherwise subject to the vagaries of the elements to an all-weather enclosure, making the interior appreciably resistant to wind, rain, dust, and cold or heat as the case may be. Such change amounts to a material alteration.
Defendant called the only expert witness to testify, Mr. Ames Bennett, an architect. Mr. Bennett, upon cross examination, testified:
"Question: All right. With reference to that one or two apartments that had those jalousies installed, would you define that as a material alteration?
Witness: Yes."
*688 In view of the foregoing we are impelled to the holding that the substitution of glass jalousies for screen was a material and substantial alteration within the meaning of those terms, and that consent was required to be given by the Association to such changes, and no consent having been obtained we must necessarily reverse.
In reaching the conclusion which we have, we do so with full regard for the reluctance an appellate court has to disturb the findings of a trial court when the issues have been fairly presented to that court. We recognize that the trial court is far better able than is this court, months later and a hundred miles away, to pass upon the issues of fact; but, in fairness to the trial court, it did not have before it the definition of "material alteration" which we have evolved in this opinion.
The concept of condominium ownership of property, although of recent popularity in the United States, is of ancient origin. Legal historians purport to trace it back to the days of early Rome and into Biblical days.[1] The Code Napoleon of 1804 gave it statutory endorsement in France.[2] Its presence under the Common Law of England is denoted by Lord Coke's reference to it.[3]
Condominium ownership has been popular in South America for many years. Puerto Rico, in 1951, enacted a statute which served to furnish a bridge for its reaching this country.[4] Section 234 of the National Housing Act[5] was passed in 1961 authorizing the Federal Housing Commission to insure condominiums. Passage of Section 234 was the impetus for some thirty-seven states to enact legislation permitting condominium ownership of property, sometimes labeling such statutes "Horizontal Property Act".[6]
Daily in this state thousands of citizens are investing millions of dollars in condominium property. Chapter 711, F.S.A., 1967, the Florida Condominium Act, and the Articles or Declarations of Condominiums provided for thereunder ought to be construed strictly to assure these investors that what the buyer sees the buyer gets. Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less. The individual ought not be permitted to disrupt the integrity of the common scheme through his desire for change, however laudable that change might be.
The other points, arguments, and theories covered in the briefs and record have not been overlooked; however, discussion of them being unnecessary to our decision, we will not unduly lengthen this opinion by reviewing them.
The Judgment appealed from is reversed and this cause remanded for entry of a judgment directing appellees to remove the glass jalousies and restore the screen enclosures in keeping with the comprehensive plans and specifications of Sterling Village Condominiums, Inc.; or, in the alternative, obtain consent of appellant to said change.
WALDEN and REED, JJ., concur.
NOTES
[1] 38 St. John's L.Rev. 3.
[2] 15 Am.Jur.2d, page 982, Condominiums, etc., Section 3.
[3] Coke on Littleton, quoted in 39 Yale L.J. 621.
[4] 63 Columbia L.Rev. 987.
[5] 12 U.S.C. § 1715y.
[6] Law of Condominiums, Ferrer & Stecher, Vol. 1, Chap. 3.