**JADE WINDS ASSOCIATION, Inc. v. GEDULDIG, et al.**

Nos. 71-1637, 38, 39, 40, 41, 42.

Small Claims Court, Dade County.

May 18, 1972.

Michael K. Feldman, Bay Harbour Islands, for the plaintiff.

John H. Lewis, Miami, for the defendants.

MORTON LEE PERRY, Judge.

Plaintiff corporation is an association charged with the management of 856 condominium units hereinafter referred to as the Jade Winds Group or Jade Winds. Defendants are members of Jade Winds Group "Bamboo Gardens" aggregating 68 condominium units which fall under the management of the plaintiff. Plaintiff sues the defendants for their proportionate share of costs of improvements designated by the plaintiff to be made under authority

given the plaintiff by virtue of the charter and by-laws of the Jade Winds Group.

Said assessments ranging from $150.54 to $264.70 per condominium were assessed by plaintiff as the result of a special meeting of the unit owners of the group held on August 30, 1971. The assessment was made for the purpose of obtaining approximately $13,000 for the purpose of landscaping areas immediately surrounding the building housing the "Bamboo I" condominiums and further, painting and tiling stairways, installing new lighting fixtures and similar type improvements and decorations.

Defendants have refused to pay the assessments, contending that the meeting of August 30, 1971 was improperly called and that certain proxies utilized at the meeting for voting purposes were invalid and of no force and effect.

A third contention, namely that the claimed assessments would exceed maximum assessments permitted under provisions of the warranty deed between Jade Winds Construction Corp. and the defendants was set forth by the defendants but not pursued through the evidence presented at trial.

Defendants contended through the evidence that the August 30, 1971 meeting was called by a notice signed by one Jack Barretts "Resident Director." They contend that such notice was in violation of Fla. Stat. 711.11(1) and 711.11(2-b) which sets forth that the operation of the condominium property shall be governed by the by-laws and that the by-laws shall provide for the method of summoning unit owners to assemble at meetings (711.11(2-b). They assert that article V, §3(A) requires that "Special meeting of the members, for any purpose or purposes unless otherwise prescribed by statute or the certificate of incorporation, may be called by the president and shall be called by the president or secretary at the request in writing of one-third of the members."

The court finds that the meeting having been called by Jack Barretts — who was neither president or secretary — was called in contradiction of the by-laws and thus in violation of Fla. Stat. 711.11(2-b).

The defendants further presented evidence showing that a number of the proxies voted at said meeting were signed in blank. One witness testified that he understood that when he signed a blank proxy in April of 1971 the meeting for which it would be used was to be held in May of that year. The proxy, however, was used for voting purposes at the August 30, 1971 meeting.

Another witness testified that he attended a meeting in May of 1971 in connection with a like proposed beautification project but testified that the members, after having twice voted, could not agree upon the terms necessary to effectuate such project.

The court further finds from the evidence that at least certain of the proxies utilized at the August 30, 1971 meeting were in violation of article V, §3(A) of the by-laws which prescribed that "at any meeting of the members, every member having the right to vote shall be entitled to vote in person or by proxy. Such proxy shall only be valid for such meeting or subsequent adjourned meeting thereof."

Plaintiff contends that notwithstanding the existence of possible defects regarding said proxies, the defendants waived their right to object to such defects by failing to do so at the time of the August 30, 1971 meeting and became estopped to do so at time of trial.

The court would note that 34 of the 59 votes cast were by proxy and that 75% of the votes cast were required to approve the beautification project at issue herein.

The court finds that the manner and circumstances under which the proxies were obtained — particularly the fact that the date of the proposed meeting was left in blank while oral representations were made that the meeting was to be held in May of 1971 (the meeting at issue was held in August of 1971) precluded such defense of waiver and estoppel.

The defense of waiver and estoppel requires knowledge on the part of the defendants as well as reliance as contended by the defendants.

The decisions regarding the standards to be applied by the courts to condominium management groups are few and the Florida Condominium Act and the articles or declarations of condominium have become a part of Florida law only during the past decade.

The court has heretofore made note of the deficiencies of the proxies and has pointed out that Florida Statute 711.11(1) and Florida Statute 711.11(2-b) relating to by-law notice requirements were not met by the plaintiff.

The Fourth District Court of Appeal has held in one of the few recorded cases relating to condominium law in Sterling Village Condominium, Inc. v. Breitenbach, July 1971, 251 So.2d 685 — "Daily in this state thousands of citizens are investing millions of dollars in condominium property. Chapter 711 F.S.A. 1967, the Florida Condominium Act and the articles or declarations of Con-

dominiums provided for thereunder ought to be construed *strictly* to assure these investors that what the buyer sees, the buyer gets." (Italics added.)

Such strict application of the statute necessarily requires that meeting notice provisions and proxy voting requirements as prescribed in the articles and by-laws and required by law be met.

The evidence shows that plaintiff has failed to strictly comply with these statutes relating to by-law notice and voting requirements. It would further appear that the plaintiff's manner of obtaining and utilization of said aforenoted proxies did neither strictly nor substantially comply with the by-law requirements or general law.

The court is not unaware of the implications of this matter — namely, that only four of sixty-eight condominium owners have refused to pay their aforenoted assessments for the reasons stated. (Two of the six defendants made belated tender of the assessments against them which were refused.) That further, such refusal of the defendants has delayed improvements which are of immediate concern to over sixty of their adjoining condominium neighbors and which improvements were favorably passed upon by the plaintiff which is charged with the overall management of 856 condominium units.

The court would note that four of the defendants voted against the assessment and the remaining two defendants did not participate in the voting thereon.

Thus, had the plaintiff gone forward and made the improvements after the meeting of August, 1971, without the financial participation of the defendants, the defendants would necessarily have shared in the benefits of the improvements which they had opposed — an awkward and inequitable situation for the parties.

Plaintiff's counsel has argued that the plaintiff is comprised of unit owners who are not professional property managers but rather, devote much of their time (many are retired) and energies without recompense toward the successful operation of this large condominium community.

Plaintiff's counsel contends that such persons of varied backgrounds should not be required to strictly comply with the law and that "substantial compliance" without prejudice to either party should constitute an adequate standard of performance by them.

Defendants' counsel contends that the plaintiff's failure to strictly follow the law is an "abdication of their responsibility" and that

public policy dictates that the plaintiff hire advisers in order to comply with strict legal standards imposed by the law.

The functions of condominium management associations such as the plaintiff are not unlike a form of local government — particularly in large condominium complexes such as Jade Winds. However, in many respects they affect their neighboring condominium owners more closely and directly ranging not only to monetary assessments, but even in certain instances to passing upon the suitability of prospective purchasers when an owner wishes to sell his condominium unit.

Such considerable authority is not without its legal responsibilities and the legislature has seen fit to pass the Condominium Act. An appellate court in the *Sterling Village Condominium* case, supra, required that the Florida Condominium Act and the articles or declarations of condominiums be strictly construed.

The keen concern shown by the parties in the trial of this case has given the court opportunity to observe the strong interest taken by the representatives of the plaintiff in this matter. Certainly, such dedicated effort rendered so generously and without recompense by these individuals is noteworthy and commendable.

However, the ultimate test to be applied by this court must be founded upon existing Florida statute and case law. The court has heretofore noted and reiterates that the plaintiff has failed to comply with the applicable Florida law as hereinbefore specifically set forth.

It appears to the court that the Governor is well advised in his intention to convene a committee to consider the many facets of condominium ownership and operation in this state.

It is hoped that this committee will examine the problems attendant to condominium management by non-professional resident committees. In this manner, meaningful legislation may be recommended which will bear upon the issues raised in this case.

The plaintiffs may reasonably expect that guidelines will be set forth establishing standards of legal compliance required of them.

Whether such standards shall parallel those applied in the board rooms of corporate business establishments, or the city hall of the local municipality, or the relaxed setting of the social club, or more likely, a combination of the three—the plaintiff should be apprised of the standards of performance expected of its officials.

Judgment is entered in favor of the defendants.