**Susan SHORT d/b/a Paradise Club, Appellant,**

v.

**The STATE of Oklahoma and Bob Johnson, Appellees.**

No. 71762.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 9, 1990.

Rehearing Denied Nov. 13, 1990.

Certiorari Denied Jan. 29, 1991.

F. Anthony Musgrave, Oklahoma City, for appellant.

Robert H. Macy, Dist. Atty., Kathleen Duncan, Asst. Dist. Atty., Oklahoma City, for appellees.

BRIGHTMIRE, Chief Judge.

The issue here is whether the trial court erred in denying the application for a license to sell nonintoxicating beverages for on-premises consumption in a building leased by the applicant in the vicinity of a school on the ground that certain changes made by the applicant to statutorily qualify her for a license were but subterfuges to circumvent the law.

We hold it did.

## I

The operative facts are these. On July 1, 1988, Susan Short, the applicant, doing business as the Paradise Club, filed an application in the District Court of Oklahoma County, seeking a license to dispense nonintoxicating beverages for on-premises consumption at 6902 Northeast 23rd Street, in Oklahoma City.[1] Bob Johnson filed a protest to the issuance of the license on behalf of the citizens of Crutcho, claiming it would violate 37 O.S.Supp.1989 § 163.24 in that the Paradise Club was within 300 feet of the Crutcho School.[2] On August 1, 1988, the Oklahoma County District Attorney filed a protest to the issuance of the license, and filed an amended protest on August 12, 1988.

The matter came on for hearing August 25, 1988. An employee of the Oklahoma County Engineer's Office testified that the Crutcho School is located on the northwest corner of the intersection of Northeast 23rd Street and Air Depot Boulevard, or alternatively described as being bounded on the east side by Air Depot Boulevard and on the south side by Northeast 23rd Street; and that the Paradise Club is located on the south side of Northeast 23rd Street, about 150 feet west of and across the street from the school. The engineer said that to the west of the Paradise Club is Godlin Avenue, which runs southward from Northeast 23rd Street. Between the Paradise Club and Godlin Avenue is a self-storage facility also to be leased by Short, and to the east of the club is a muffler shop.

According to the engineer, a chain link fence approximately four feet in height had recently been erected along the north property line of the Paradise Club lot and as a consequence the only way for pedestrian traffic to reach the Paradise Club would be to either climb over the fence or to proceed west past the club, turn south onto Godlin Avenue, then left through a gate at the self-storage business, and then proceed between two buildings, to a gravel parking lot directly south of the club.

Finally the engineer testified that based on the Warren Shaw Survey, the distance from the property line of the Crutcho School to the west edge of the Paradise Club building is 255 feet. He added that in his opinion the entire building was within 300 feet of the school, after deducting the width of Northeast 23rd Street. On cross-examination, however, the witness stated that the most direct route which could be taken by a pedestrian from the nearest point of the school property without crawl-

1. Reference is to 37 O.S.Supp.1988 § 163.2(a), which defines "nonintoxicating beverages" as: "includ[ing] beverages containing more than one-half of one percent (½ of 1%) alcohol by volume, and not more than three and two-tenths percent (3.2%) alcohol by weight, including but not limited to beer or cereal malt beverages obtained by the alcoholic fermentation of an infusion of barley or other grain, malt or similar products."

2. Subject statute states in part:
"From and after the effective date of this act, it shall be unlawful for any place licensed to sell nonintoxicating beverages as defined in paragraph (a) of Section 163.2 of this title, for on-premise consumption to be located within three hundred (300) feet from any public school or church property primarily and regularly used for worship services and religious activities....
. . . .
The distance indicated in this section shall be measured from the nearest property line of such public school or church to the nearest public entrance door of the premises of any place licensed to sell such nonintoxicating beverages for on-premise consumption along the street right-of-way line providing the nearest direct route usually traveled by pedestrians between such points. For purposes of determining measured distance, property situated on the opposite side of the street from such public school or church shall be considered as if it were located on the same side of the street with the school or church...."

**1152**

ing over the fence, would require walking over 300 feet to get to the club entrance.

Ronald Briggs, a land surveyor called as a witness by Short, testified that he took various measurements to compare them with the Horace H. Golden Survey of the area, and believed that the measurements on the survey were correct. He testified that he took a measurement from the west end of the Crutcho School boundary beginning on the south side of Northeast 23rd Street, west to Godlin Avenue to the private drive at the self-storage business, and then took a diagonal measurement to the entrance door of the Paradise Club located at the southwest corner of the building. He testified that the distance from the point of beginning to the point of ending was 677 feet.[3]

Short testified that she leased this building in order to open the Paradise Club. She stated that the entrance which had previously been located on the north side of the building facing Northeast 23rd Street had been changed to an exit, and that the only entrance to the building is now located on the south side of the building, which has to be accessed from Godlin Avenue. Thus, she said, to enter the club all business traffic must proceed down Godlin Avenue, through the private drive on the self-storage business property, to the parking lot south of the building.

The trial court denied the application, finding that the installation of the chain link fence, which the court characterized as a "shaky" one, and the establishment of an entrance on the south end of the building amounted to an attempt to circumvent the law. The fence was put up along what the court "presume[d]" to have been the front of the building for many years, and the court found that "the most direct route" that a pedestrian could travel from the Crutcho School to the Paradise Club was west on Northeast 23rd Street, then over the fence to the north side of the building. In reaching the latter conclusion the trial court said it was obvious that some pedes-

trians had climbed the fence as evidenced by depressions on both ends of the fence, and therefore the court evidently did not consider two significant statutory criteria, *viz.*, (1) that the distance "shall be measured ... along the ... nearest direct route *usually* traveled by pedestrians" between the relevant points; and (2) that one of the important terminal points is the "entrance" to the club which is on the south end of the building. 37 O.S.Supp.1989 § 163.24 (emphasis added).

From this adverse ruling Short appeals.

**II**

The issue as this court sees it is not whether Short has attempted to circumvent the law, but whether she has shown facts which entitle her to a license.

Short correctly points out that the only protest to her beverage license is based on the club's proximity to the Crutcho School. She contends that after erecting the chain link fence and establishing the entrance to the club off of Godlin Avenue, a pedestrian traveling from the nearest property line of the school along the right-of-way line in the nearest direct route usually traveled by pedestrians to the entrance of the club, would have to travel more than 600 feet. She urges that having thus met all the requirements for a beverage license she has a legal right to have one issued to her, and that the trial court's denial of the license was arbitrary, capricious and unreasonable and constitutes an abuse of discretion.

Underlying the foregoing general issue is a more fundamental one: Whether a beverage license applicant—if faced with the reality that his place of business may be too close to a protected premises, *i.e.*, a public school or church—may legally erect barriers, make structural changes, or materially alter his premises in order to satisfy statutory prerequisites.

We hold that the applicant may so alter her premises so long as the changes are

---

**3.** This measurement of the route of pedestrian travel also deducts the width of the Northeast

23rd Street right-of-way.

permanent and are found by the court to substantially satisfy the requirements of the statute.

It has been recognized in Oklahoma, of course, that the state has broad inherent power to control all liquor traffic within its borders. The supreme court has held "that the liquor industry because of the very nature of its product requires strict control and close supervision [and] [a]s a result, the Legislature by virtue of the police power of the State possesses broad powers to regulate and supervise all phases of traffic in intoxicating liquors." *Oklahoma Alcoholic Beverage Control Bd. v. Seely*, 621 P.2d 534, 537 (Okl.1980) (quoting *State v. Parham*, 412 P.2d 142, 147 (Okl.1966)).

■ But at the same time the court in denying beer licenses may not go beyond restrictions set by the legislature. For example, the supreme court in *Allison v. Howell*, 204 Okl. 404, 230 P.2d 706 (1951), concluded that where an applicant had met all qualifications required by law for obtaining a beer license, the trial court had abused its discretion in denying the license based on a finding that the tavern was situated on a route frequently traveled by high school students on their way to school and therefore the granting of the license would be against the peace, health and safety of the community. The high court emphasized the fact that no statute prohibited the granting of a beer license merely because the existence or location of a beer tavern may not be conducive to the best interest of students. The court further noted that "any restriction as to places or areas for sale of beer is purely a legislative function". *Id.* at 709; *See Salaney v. Ferris*, 201 Okl. 236, 204 P.2d 270 (1948).

■ In the instant case, Short presented evidence that alterations had been made to the Paradise Club, *e.g.*, reversing the locations of the entrance and exit,[4] relocating the parking area, erecting a fence to prohibit access to the premises from Northeast 23rd Street, and arranging for the lease of a private drive adjacent to Godlin Avenue to provide the only means of ingress and egress. Without a doubt such modifications were made in order to bring the Paradise Club into compliance with the § 163.24 prerequisite for the location of a beer tavern. It was an abuse of discretion for the trial court to find that Short's alteration of the premises was merely an attempt to circumvent the distance requirement of the statute, instead of focusing on the substantive effect of the changes in relation to the statutory determinant—the "direct route usually traveled by pedestrians" to reach the entrance of the proposed beer parlor.

Had it been the intention of the legislature simply to prohibit the location of bars and taverns within a specified distance of schools and churches, it could have easily required the 300–foot distance to be determined by drawing a straight line between the closest property lines of the liquor establishment and the protected premises. But the statutory adoption of a "nearest-direct-route-usually-traveled-by-pedestrians" criterion between determinants (a) "the nearest property line" of the school, and (b) "the nearest public entrance" of the tavern, for measuring the required distance indicates that the legislature was more concerned with accessibility than proximity. Consequently since the modifications made to the premises in question are aimed at restricting access to the Paradise Club to Godlin Avenue, the issue for the trial court to decide is whether the changes are sufficient to effect a permanent walking distance of over 300 feet from the nearest boundary of Crutcho School to the nearest Paradise Club entrance. If so, then the requirements of § 163.24 are satisfied. Restricting accessibility to the club to Godlin Avenue clearly responds to the intent and purpose of the statute.

Both the Warren Shaw and Horace H. Golden surveys relied upon by the parties

---

4. According to the Shaw Survey, the distance from the southwest corner of the Crutcho School property to the south entrance of the Paradise Club is 348.6 feet, after the width of the Northeast 23rd Street right-of-way is deducted. The distance according to the Golden Survey is 309.2 feet. Crossing Northeast 23rd Street diagonally shortens the distance to 179 feet.

deduct the width of Northeast 23rd Street in their distance calculations. Section 163.-24 provides that where a place licensed to sell nonintoxicating beverages is "situated on the opposite side of the street from such public school or church [it] shall be considered as if it were located on the same side of the street with the school or church." We believe that § 163.24 contemplates that where the entrance of a place licensed to sell nonintoxicating beverages is located on the other side of an intervening public street from a public school or church, the width of the street right-of-way is disregarded in measuring the 300–foot minimum distance requirement, regardless of whether or not the entrances to the licensed premises and the protected premises are situated on the same street.

The trial court was understandably concerned that the chain link fence might be merely a temporary or cosmetic modification erected solely for the purpose of securing the license. The trial court's apprehensions were supported at least in part by circumstantial evidence indicating that pedestrians had been climbing over the fence even before the date of the hearing. But the judicial response should not be to reject the modification as a "circumvention" of the law, but on the ground the fence is inadequate to prevent access. In other words, before obtaining a license Short will have to prove that she has made material and permanent alterations to the Paradise Club so as to bring her establishment within all the necessary statutory requirements. The term "material alteration" of a building, for instance, was defined in *Sterling Village Condominium, Inc. v. Breiten-*

*bach,* 251 So.2d 685, 687 (Fla.Dist.Ct.App. 1971) as follows:

> "to palpably or perceptively vary or change the form, shape, elements or specifications of a building from its original design or plan, or existing condition, in such a manner as to appreciably affect or influence its function, use or appearance."

The same would apply to the fence.

As we view the record, Short should present evidence not only that a substantial non-traversable wall or fence north of the club has been erected and maintained but that the tavern entrance now at the south end of the building has been made permanent and the rear exit doors are fixed so that they can only be used as exits in accordance with applicable fire codes. And finally there should be evidence that the big Paradise Club sign on Northeast 23rd Street has either been relocated or redesigned to make it clear that the entrance to the club is accessible only via Godlin Avenue.

### III

The order denying the application for a beverage license is vacated and the cause is remanded for further proceedings consistent with this opinion.

REIF, P.J., and MEANS, J., concur.