833 So.2d 816 (2002)
Daniel C. GEORGE, Appellant,
v.
BEACH CLUB VILLAS CONDOMINIUM ASSOC., Appellee.
No. 3D02-526.
District Court of Appeal of Florida, Third District.
November 27, 2002.
*817 Harvie S. Duval, North Miami; Louis C. Arslanian, Hollywood, for appellant.
Fowler, White, Burnett, and David A. Friedman, Miami, for appellee.
Before SCHWARTZ, C.J., and RAMIREZ, J., and NESBITT, Senior Judge.
RAMIREZ, J.
Daniel C. George appeals from a final judgment of foreclosure awarding Beach Club Villas Condominium Association, Inc., sums due for special assessments for termite damage repair, roof repairs and roof replacement. Beach Club Villas cross-appeals the portions of the judgment which invalidate the special assessment for replacement of the mansards and an award that gives George a credit for property damage. We affirm the award to Beach *818 Club Villas for the termite damage repairs, the denial of the assessment to replace the roof mansards, and a credit to George for his property damage. However, we reverse the award for the roof repair and replacement assessments because this relief was not properly pled.

FACTS
In 1997, the City of North Miami Beach warned Beach Club Villas that it would be fined if the roof mansards were not painted and repaired. The mansards were covered with cedar shingles which were over twenty-five years old. The Association received several estimates and determined that changing to terracotta tiles would be half the cost of replacement with new cedar shingles. The Board of Directors then passed a special assessment to have the cedar shingles replaced with terracotta tiles.
Once work began on the shingle replacement, the roofers discovered termite damage. The mansard contract did not cover termite damage repairs, so the Board passed an additional special assessment for the repairs necessary to fix the termite damage.
George owns two units at Beach Club Villas and is on the Board of Directors. He attended all of the meetings in question and objected that the Board's actions were illegal because all the unit owners should have been allowed to vote on the assessments. He did not pay any of the special assessments for either of his units.
In January 1999, Beach Club Villas moved to foreclose on its claim of lien for the mansard replacement and termite damage repair assessments on George's units. George counterclaimed for property damage caused by roof leaks during the mansard replacement period. In August 1999, the Board voted for an assessment for roof repairs. In April 2000, the Board passed an assessment for roof and seawall repairs. At the beginning of trial, Beach Club Villas announced that it would also be seeking a judgment for these latter assessments under the January 1999 claim of lien. Beach Club Villas neither moved to amend its complaint nor did it file additional claims of lien.
The trial court concluded that the special assessment for replacing the mansard shingles was not valid because changing from wood to terracotta was a material alteration which required the vote of the entire Association pursuant to section 718.113(2), Florida Statutes (2000). The court awarded Beach Club Villas all sums due on the assessments for termite damage repairs, roof repairs, and roof replacement pursuant to section 718.116(5), Florida Statutes (2000), with a credit to George for damages caused by the roof leaks.

MAINTENANCE v. ALTERATION
We affirm the trial court's award for the termite damage repair assessment. We also find no error in the trial court's determination that the mansard work effected a material alteration of the property which required a vote of the unit owners.
In deciding whether the Board was required to obtain the approval of the entire Association to make repairs, we must first examine the nature of the proposed work. If it constitutes ordinary maintenance, the Board has the authority to make those repairs on its own. If the work constitutes a material alteration or a substantial addition, the Board must obtain the approval of the Association members. We thus affirm the award for the termite damage repairs assessment because it is hardly debatable that this undertaking constituted maintenance.
A more difficult issue is the trial court's invalidation of the mansard replacement *819 assessment. The Association argues that the work was necessary to maintain the common elements. See Ralph v. Envoy Point Condo. Assoc., Inc., 455 So.2d 454, 455 (Fla. 2d DCA 1984) ("Simply because necessary work for maintenance may also constitute alterations or improvements does not nullify a condominium Board's authority and duty to maintain the condominium common elements."). See also Farrington v. Casa Solana Condo. Assoc., Inc., 517 So.2d 70, 72 (Fla. 3d DCA 1987) ("The `business judgment rule' will protect a corporation's Board of directors' business judgment as long as the Board acted in a `reasonable' manner in passing the special assessment."). Here, Beach Club Villas was faced with fines if the cedar shingles were not repaired and painted. Because the shingles were at the end of their useful life, the Association argues that it was reasonable for the Board to determine that replacement was the proper course of action. In fact, the Association asserts that the Board's decision to use tile at half the cost of new shingles was not only reasonable, but prudent as well. The case law, however, does not support the Association's argument.
In Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685, 687 (Fla. 4th DCA 1971), the court stated that "the term `material alteration or addition' means to palpably or perceptively vary or change the form, shape, elements or specifications of a building from its original design or plan, or existing condition, in such a manner as to appreciably affect or influence its function, use, or appearance." The court concluded that a change from wire screening to glass jalousie windows constituted a material and substantial alteration. Similarly, in Islandia Condo. Ass'n, Inc. v. Vermut, 501 So.2d 741, 743 (Fla. 4th DCA 1987), the court held that changing the color scheme of the development from one of multi-color clusters to one uniform color fell within the Sterling definitions of substantial, material alteration.
We thus conclude that the change from cedar shingles to barrel tiles constituted a substantial and material alteration in appearance. The trial court's conclusion to that effect was supported by competent, substantial evidence. See Cottrell v. Thornton, 449 So.2d 1291, 1292 (Fla. 2d DCA 1984) (stating that whether the proposed changes were substantial additions or alterations, or necessary repairs, was a question of fact for the trial court).

AWARD FOR ASSESSMENTS NOT PLED
We find error, however, in the trial court's assessments for roof repairs and replacement which were not part of the pleadings. We reject the argument that the claim of lien for the mansard replacement and termite damage repairs can also serve to foreclose on these two assessments.
Section 718.116(5)(b), Florida Statutes (2002), states:
[t]o be valid, a claim of lien must state the description of the condominium parcel, the name of the record owner, the name and address of the Association, the amount due, and the due dates.... The claim of lien shall secure all unpaid assessments which are due and which may accrue subsequent to the recording of the claim of lien and prior to entry of a certificate of title. (Emphasis added).
The trial court used the highlighted language to justify allowing Beach Club Villas to piggy-back new assessments even though they had not been pled. The word "accrue" references assessments already made before a claim of lien is filed, but coming due afterwards. The trial court thus interpreted the language of the statute as authorizing the inclusion of the two *820 separate assessments made after the filing of the claim of liens in its award to Beach Club Villas.
Section 718.116(6)(a) states that the action to foreclose a lien is brought in the same manner as an action to foreclose a mortgage of real property. Section 718.116(3) references interest on assessments and installment payments on those assessments which are not paid when due. This language suggests that the statute does not refer to additional assessments for other purposes.
Even if we assume that the statute authorizes Beach Club Villas to piggy-back new assessments on its claim of lien, the Florida Rules of Civil Procedure still require parties to give their opponents notice of what is going to be tried. See Fla. R. Civ. P. 1.110(f)("Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count...."). This notice is provided through the pleadings. See Brown v. Gardens by the Sea South Condo. Assoc., 424 So.2d 181, 183 (Fla. 4th DCA 1983) ("[I]t is a fundamental rule that the claims and ultimate facts supporting same must be alleged [in the pleadings]. The reason for the rule is to appraise [sic] the other party of the nature of the contentions that he will be called upon to meet, and to enable the court to decide whether same are sufficient."). As the relief awarded for these subsequent assessments were not part of the complaint, Beach Club Villas had to move to amend the pleadings to be able to recover these damages. See eg. Arky, Freed, Stearns, Watson, Greer, Weaver & Harris v. Bowmar Instrument Corp., 527 So.2d 211 (Fla. 3d DCA 1987). Here the complaint and the claim of lien sought to foreclose only for the mansard replacement and termite damage repair assessments. This is not a situation where a condominium is foreclosing on a claim of lien for failure to pay monthly assessments and several months have accrued since the filing of the complaint. This is a case where separate special assessments were made for other substantial repairs for which George may have different defenses. In fact, these later assessments may be considered distinct claims or "contracts" for which separate claims of lien must be filed. See Lee v. All Florida Const. Co., 662 So.2d 365, 366 (Fla. 3d DCA 1995) (stating that separate claims of lien must be filed for work done under separate contracts). Thus, these new claims added on the day of trial deprived George of due process.
We find no error in the trial court's award of property damages on George's counterclaim, but George is not entitled to attorney's fees on his counterclaim because he failed to plead the statutory or contractual basis on which he sought fees. See Dealers Ins. Co. v. Haidco Invest. Ents., Inc., 638 So.2d 127, 129-30 (Fla. 3d DCA 1994).
Affirmed in part, reversed in part.