985 So.2d 43 (2008)
D & T PROPERTIES, INC., Appellant,
v.
MARINA GRANDE ASSOCIATES, LTD., a Florida limited partnership, Appellee.
No. 4D07-2931.
District Court of Appeal of Florida, Fourth District.
June 11, 2008.
Rehearing Denied July 23, 2008.
Gary J. Nagle of Law Offices of Gary J. Nagle, Juno Beach, for appellant.
*44 John L. Pelzer and Robin F. Hazel of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee.
Elliot H. Scherker, Greenberg Traurig, P.A., Miami, Jerold I. Budney, Greenberg Traurig, Fort Lauderdale, and Rodolfo Sorondo, Jr., Holland & Knight, LLP, Miami, for Amicus Curiae Florida Latin Builders Association and Builders Association of South Florida.
GROSS, J.
The buyer of a condominium unit sought a declaratory judgment concerning its right to cancel a purchase agreement under section 718.503(1)(a)1, Florida Statutes (2006). We hold that the buyer may not cancel the agreement because the challenged amendments to the budget did not materially alter or modify the offering in a manner that was adverse to the buyer. We therefore affirm the result reached by the circuit court, but on grounds different from those stated in the final judgment.
In April 2005, D & T Properties, Inc. entered into a contract to purchase a condominium unit for $495,000 from Marina Grande Associates, Ltd., the developer. At the time, the condominium was under construction on the intracoastal waterway in Palm Beach County. Paragraph 25 of the contract contained the language set forth in section 718.503(1)(a)1, requiring delivery to the purchaser of "all of the items required to be delivered" by the developer under section 718.503. Also, paragraph 25 contained the following language mandated by section 718.503(1)(a)1.:
THIS AGREEMENT IS ALSO VOIDABLE BY PURCHASER[1] BY DELIVERING WRITTEN NOTICE OF THE PURCHASER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE PURCHASER.
Concerning the developer's ability to make changes, Paragraph 27 of the contract provided:

Changes. Seller may make changes in the Condominium Documents in its sole discretion by providing Purchaser with all such amendments that are made, provided that, as to these changes, Purchaser will have fifteen (15) days from the date of receipt of such changes from Seller which materially alter or modify the offering of the Condominium in a manner adverse to Purchaser in which to cancel this Purchase Agreement (by delivering written notice to Seller of such cancellation) and receive a refund of any deposits with applicable interest. Seller will be relieved of all obligations under this Purchase Agreement when Seller refunds the deposits and interest. Purchaser will not be permitted to prevent Seller from making any change it wishes in its sole discretion, nor to pursue any remedy other than the 15-day cancellation remedy described above (and then only for the kind of changes that materially alter or modify the offering in a manner that is adverse to Purchaser).
In compliance with section 718.504, Marina Grande provided the buyer with an offering circular[2] containing a description *45 of the condominium, including an estimated operating budget. Prepared in September 2004, this operating budget estimated the monthly and annual expenses for the condominium as a whole, and for the individual units, for the period of January 1 through December 31, 2006. See § 718.504(21), Fla. Stat. (2006).
About 13 months after entering into the purchase agreement, in May 2006, Marina Grande sent the buyer an amendment book to the offering circular. The amendment book was accompanied by a letter from Marina Grande stating that if any of the amendments materially altered or modified the offering in a manner that was adverse to D & T Properties as the buyer, then D & T Properties had 15 days after the date of receipt of the amendment to deliver written notice of its intention to cancel the purchase agreement. The developer's letter further opined that the amendments did not "materially alter or modify the offering in a manner which [was] adverse to the purchaser" so that Marina Grande was not offering "any voidability period."
Within 15 days after receiving the amendment book, D & T Properties sent a letter to Marina Grande exercising its right as the purchaser to cancel the agreement and requesting a full refund of its $99,000 deposit. Marina Grande responded that the amendments were not sufficiently material and adverse to the buyer to warrant the cancellation of the agreement.
As a result, D & T Properties filed a declaratory judgment action seeking a determination of its right to cancel. The trial court presided over a two day non-jury trial. Evidence focused on differences between the 2004 estimated operating budget in the offering circular and the revised budget in the 2006 amendment book.[3]
In the 2004 estimated budget, Marina Grande indicated that the entire condominium's total annual expenses would be $2,417,069.20; the 2006 amended estimated budget stated that the annual expenses would be $3,288,182.00, a 36% increase of $871,112.80. D & T Properties traced the increase to three major sources. First, the annual cost of property insurance went from $311,028.00 to $511,860.00, a 65% increase of $200,832.00. Second, the annual electricity expense increased from $221,400.00 to $292,596.00; that is, a 32% rise of $71,196.00. Third, Marina Grande switched from a standard cable television system to a state-of-the-art multimedia system which bundled services for cable, phone, and internet in one package. The trial judge wrote in the final judgment that "a telecommunications consultant . . . testified that he did not know of any other technology system in Palm Beach County which would come close in quality to the new system which Marina Grande was installing. The consultant also testified that the technology of the new system would last into the future." The added technology increased that expense from $125,221.20 to $653,328.00, a 422% increase of $528,106.80.
Based on these changes, the 2006 amended budget increased the assessments on the unit under contract. The original budget estimate projected a total annual assessment of $5,884.49, or $490.37 a month; the amended budget provided for an annual assessment of $8,030.66, or $669.22 a month, a 36% increase of $2,146.17, or $178.85 per month. Of this *46 monthly increase, about $90[4] was attributable to the multimedia system; this $90 amounts to an 18.35% increase over the original estimated monthly payment.
Marina Grande blamed the 2004 and 2005 hurricanes for the rise in insurance and utility charges, both increases beyond its control. The developer conceded that the switch from a standard cable television system to a state-of-the-art system was not beyond its control, taking the position that the upgrade increased the value of the unit, so that it did not materially alter the offering in a manner which was adverse to the buyer. Finally, the developer impugned the buyer's motives for the cancellation, contending that D & T Properties was a speculator seeking to avoid a drop in resale value in a falling market.
Crucial to this case is how Chapter 718 treats budget estimates that are a part of a developer's required disclosure under section 718.503.
Section 718.503(1)(a)1 permits a buyer to cancel a purchase agreement within 15 days of receiving from the developer "any amendment which materially alters or modifies the offering in a manner that is adverse to the buyer." Part of the developer's required disclosure under section 718.503(1)(b)(6) is the "estimated operating budget for the condominium and a schedule of expenses for each type of unit." The idea of an "estimated" operating budget carries with it the notion that the estimates will change as a unit moves toward completion. As the amicus brief points out, "[i]t is the very nature of future operating budget estimates that those estimates inevitably will have to be updated before the predicted expenses are actually incurred. Unlike other factual information included in the offering with respect to purchased units, the only aspect of an estimated future year's budget upon which a purchaser can reasonably rely is that the budget is a good faith estimate of future expenses." Under section 718.503(1)(a)1, does the developer bear all the risk of escalating expenses? Where the statute contemplates the updating of a budget, is a revised budget an "amendment" within the meaning of the statute?
These ambiguities were laid to rest by recent legislative amendments to sections 718.503-718.504 which clarified existing law with respect to the disclosure of operating budget estimates under Chapter 718. See Ch. 2007-80, § 7-8, Laws of Fla. Section 8 of Chapter 2007-80 added section 718.504(21)(e), Florida Statutes (2007) which states:
Each budget for an association prepared by a developer consistent with this subsection shall be prepared in good faith and shall reflect accurate estimated amounts for the required items in paragraph (c) at the time of the filing of the offering circular with the division, and subsequent increased amounts of any item included in the association's estimated budget that are beyond the control of the developer shall not be considered an amendment that would give rise to rescission rights set forth in s. 718.503(1)(a) or (b), nor shall such increases modify, void, or otherwise affect any guarantee of the developer contained in the offering circular or any purchase contract. It is the intent of this paragraph to clarify existing law.

(Emphasis added). The section provides that if the developer's disclosed estimated budget meets the requirements of the statute, "subsequent increased amounts" "that are beyond the control of the developer" shall not be considered an "amendment" under section 718.503(1)(a) or (b) that *47 would give rise to the buyer's right to cancel an agreement. Consistent with the idea that the buyer in a condominium purchase agreement will bear the risk of some increased costs, Chapter 2007-80, section 8 added section 718.504(21)(d), requiring this warning in conspicuous type:
THE BUDGET CONTAINED IN THIS OFFERING CIRCULAR HAS BEEN PREPARED IN ACCORDANCE WITH THE CONDOMINIUM ACT AND IS A GOOD FAITH ESTIMATE ONLY AND REPRESENTS AN APPROXIMATION OF FUTURE EXPENSES BASED ON FACTS AND CIRCUMSTANCES EXISTING AT THE TIME OF ITS PREPARATION. ACTUAL COSTS OF SUCH ITEMS MAY EXCEED THE ESTIMATED COSTS. SUCH CHANGES IN COST DO NOT CONSTITUTE MATERIAL ADVERSE CHANGES IN THE OFFERING.
Along with these clarifications, Chapter 2007-80, section 7 added language to section 718.503(1)(a)1[5] and added section 718.503(1)(c)[6] concerning the legal effect of subsequent budget estimates.
Significant to this case is the express legislative statement that it was the intent of these Chapter 2007-80 amendments "to clarify existing law." § 718.503(1)(c), Fla. Stat. (2007). This is not a case where a court struggles to discern the purpose behind a statute. Where the legislature expressly characterizes the intent of legislation, it is especially appropriate to consider the amended statute to determine the original legislative intent of the statute. See Finley v. Scott, 707 So.2d 1112, 1116 (Fla.1998). "[L]egislative amendments meant to change a law should not be given retroactive effect, but where the statute is being clarified, such later amendment may also be looked upon as stating what was the original legislative intent." Kaplan v. Peterson, 674 So.2d 201 (Fla. 5th DCA 1996); see also State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 61 (Fla.1995); Lowry v. Parole and Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985) (stating that where "an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise,[[7]] a court may *48 consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof").
D & T Properties cites Laforet, 658 So.2d at 61, to argue that the Chapter 2007-80 amendments should not apply to this case. In Laforet, the supreme court held that a statute could not be applied retroactively where it contradicted an earlier supreme court interpretation of the same statute that established a damage framework in first party bad faith cases. Id. However, this case does not present a situation where the 2007 legislation impaired "vested rights, create[d] new obligations, or impose[d] new penalties." See id. at 61. The legislation clarified an ambiguity in earlier legislation about the effect of budget amendments on the contracting process. Chapter 2007-80 did not nullify the plain language of earlier legislation. Cf. Kaisner v. Kolb, 543 So.2d 732 (Fla.1989) (refusing to apply statute retroactively because it disturbed accident victim's vested interest under prior statute; title to act claimed to be clarifying language but no clarification could be found in body of the act).
One effect of the Chapter 2007-80 clarification of Chapter 718 is that an update to an estimated operating budget resulting from "matters beyond the developer's control" does not constitute an "amendment" within the meaning of section 718.503(1)(a)1 that allows a buyer to cancel a purchase agreement. In this case, paragraph 17 of the purchase agreement and Notes 6 and 10A of the estimated operating budget contained warnings about the uncertainty of supplied budgets almost identical to those now required by statute. There is no indication that the 2004 estimated operating budget was not prepared in good faith. Two of the sources of the budget increaseproperty insurance and the annual electricity expense  were beyond Marina Grande's control. Therefore, that portion of the budget increase allocated to these items could not support the buyer's cancellation of the purchase agreement.
There remains the issue of the $90 per month budget increase attributable to the multimedia system. This was a budget amendment over which the developer had control, so it could "be considered an amendment that would give rise to rescission rights set forth in s. 718.503(1)(a) or (b)." § 718.504(21)(e), Florida Statutes (2007). The issue, then, is whether this budget increase was an amendment which materially altered or modified the offering in a manner that was adverse to the purchaser.
We reject the developer's argument that the increased cost for the technology package was not an amendment adverse to the buyer because it "add[ed] value to the Unit." The technology package was an "amendment" because it was a change from the offering circular; it was adverse to the buyer because it cost the buyer more than the original estimate. As the trial judge recognized, taking Marina Grande's argument to the extreme leads to absurd results  a developer's substitution of gold fixtures for those of stainless steel would not be adverse to the buyer because the new plumbing added value to the unit. The statute should not be construed in a way that defies common sense.
The central issue is whether the $90 budget increase attributable to the multimedia system "materially altered or modified the offering." In Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971), we construed the term "material" in a different section of an earlier iteration of the Condominium Act. The section there at issue section 711.13, Florida Statutes (1971)  provided that "[t]here shall be no material *49 alteration or substantial addition to the common elements except in a manner provided in the declaration." Breitenbach, 251 So.2d at 686. To determine the meaning of "material" we looked at the dictionary definition: "That which is important; that which has influence or effect." Id. at 687 (quoting BLACK'S LAW DICTIONARY (4th ed.1951)). We then held that as it applied to buildings, the term "material alteration or addition" meant:
[T]o palpably or perceptively vary or change the form, shape, elements or specifications of a building from its original design or plan, or existing condition, in such a manner as to appreciably affect or influence its function, use, or appearance.
Breitenbach, 251 So.2d at 687. As it applied to alterations or additions to structures, we found that the term "material" connoted something significant, a change that would "appreciably affect or influence" the function, use, or appearance of the building. Our definition of "material" called for an objective test, not one that depended on the particular sensibilities of a unit owner.
BB Landmark, Inc. v. Haber, 619 So.2d 448 (Fla. 3d DCA 1993), took a similar approach to its interpretation of the term "material" in section 718.503(1)(a), Florida Statutes (1989), the same statutory language that we confront here. The case involved a condominium purchase contract calling for $10,384.00 in extras requested by the buyers; after entering into the contract, the developer wrote to the buyer and "unilaterally increased the cost of the extras to $17,122," "a 65% increase over the original cost of the extras." Id. at 449. The buyers timely cancelled the contract under section 718.503(1)(a). The buyers filed suit to enforce their right to cancel. The third district construed the term "materially" in section 718.503(1)(a) to mean "to a significant extent or degree"; the court held that the 65% price increase of $6,738.00 for the extras was a material alteration or modification of the offering that entitled the buyers to cancel under section 718.503(1)(a). In assessing the materiality of the change, the third district appeared to apply an objective test. The court did not consider the financial condition of the buyers to decide whether the price increase was significant to them.
Applying Breitenbach and BB Landmark, we hold that an objective test is appropriate to decide whether an amendment amounts to a "material" alteration or modification of an offering under section 718.503(1)(a)  would a reasonable buyer under the purchase agreement find the change to be so significant that it would alter the buyer's decision to enter into the contract?[8]
*50 Applying this test, we hold that the $90 change attributable to the multimedia system was not a material one that gave rise to the buyer's right to cancel under section 718.503(1)(a). First, the change allowed for internet access in the units; like electricity, internet access is becoming a necessity of modern life. Unlike a change from a beige to a hot pink exterior, this modification is one of which a reasonable buyer would approve. Next, the $90 per month increase is only 18.35% above the $490.37 budget estimate, far below the 65% item increase that the third district found to be material in BB Landmark. On an annual basis the budget increase is $1,080.00, just .21% of the $495,000 contract price of the unit. While the statute does not exclusively tie the materiality of an alteration or modification to the purchase price, such a consideration is a proper part of the materiality equation. Cf., Johnson v. Davis, 480 So.2d 625, 629 (Fla. 1985); Billian v. Mobil Corp., 710 So.2d 984, 987 (Fla. 4th DCA 1998).
We briefly address two arguments made by the parties. We reject the contention that Florida Administrative Code Rule 61B-17.006(2)(d)3d authorized the budget amendments under the facts of this case. We agree with the trial judge that such an application of the rule "would nullify the Legislature's intent to give buyers the right to void an agreement as provided in [section] 718.503." We also concur with the trial court that a buyer's motivation is irrelevant in deciding whether the buyer has the right to cancel under the statute. As the trial judge observed, the buyer's right to cancel turns on whether the statutory test is satisfied, not on whether the buyer seeks "to void the agreement due to the loss of resale value caused by a downturn in the real estate market."
Affirmed.
STEVENSON and MAY, JJ., concur.
NOTES
[1] Section 718.503(1)(a)1., Florida Statutes (2006), uses the word "buyer," not "purchaser," in the notice.
[2] The offering circular or prospectus is a statutory requirement placed upon certain developers for the benefit of the purchasers. See § 718.504, Fla. Stat. (2006).
[3] The figures contained in this opinion were obtained from the trial court's order, which the parties do not dispute.
[4] Marina Grande conceded this figure at oral argument.
[5] This language was required to be added in conspicuous type to a contract for sale of a residential unit:

FIGURES CONTAINED IN ANY BUDGET DELIVERED TO THE BUYER PREPARED IN ACCORDANCE WITH THE CONDOMINIUM ACT ARE ESTIMATES ONLY AND REPRESENT AN APPROXIMATION OF FUTURE EXPENSES BASED ON FACTS AND CIRCUMSTANCES EXISTING AT THE TIME OF THE PREPARATION OF THE BUDGET BY THE DEVELOPER. ACTUAL COSTS OF SUCH ITEMS MAY EXCEED THE ESTIMATED COSTS. SUCH CHANGES IN COST DO NOT CONSTITUTE MATERIAL ADVERSE CHANGES IN THE OFFERING.
[6] Section 718.503(1)(c) reads:

Subsequent estimates; when provided.  If the closing on a contract occurs more than 12 months after the filing of the offering circular with the division, the developer shall provide a copy of the current estimated operating budget of the association to the buyer at closing, which shall not be considered an amendment that modifies the offering provided any changes to the association's budget from the budget given to the buyer at the time of contract signing were the result of matters beyond the developer's control. Changes in budgets of any master association, recreation association, or club and similar budgets for entities other than the association shall likewise not be considered amendments that modify the offering. It is the intent of this paragraph to clarify existing law.
[7] The amicus brief points out that the 2005 hurricane season led to increased costs which the legislature recognized in other legislation. See § 364.051(4)(b), Fla. Stat. (2005); § 215.5595(1), Fla. Stat. (2006).
[8] In formulating this definition of a "material" alteration or modification under the statute, we reject the subjective test fashioned by the trial court, which was attacked by both the appellant and the amicus brief on appeal, and which received only lukewarm support from the appellee. Under the trial court's approach, a buyer could void an agreement only if an amendment was adverse to the buyer "based on an objective consideration of that buyer's specific situation or financial condition." Applying this test, the trial judge found that the change was not material because the buyer had sufficient cash available to pay for the budget increase. The trial court's approach would require an analysis of each purchaser's financial condition to determine if a budget update was material to that buyer. We agree with the appellant that this interpretation of the statute would create an "arbitrary" standard for enforcing the statute "which exposes buyers to invasive probing and public airing of their most personal and confidential financial information." We agree with the amicus brief that this interpretation is contrary to a "recognized canon of grammatical statutory construction" and that the case-by-case approach favored by the trial court would prevent developers from "predicting what effect a [budget] update would have on all pending contracts, which would adversely affect lenders' willingness to rely on contracts in extending financing."