105 So.2d 1 (1958)
John P. PEDERSEN, doing business as Africa, U.S.A., Petitioner,
v.
Ray E. GREEN, as Comptroller of the State of Florida, Respondent.
Supreme Court of Florida.
July 30, 1958.
Rehearing Denied October 1, 1958.
*2 Anderson, Gundlach & Hull, Fort Lauderdale, for petitioner.
Richard W. Ervin, Atty. Gen., Phillip Goldman, Asst. Atty. Gen., and Lewis H. Tribble, Tallahassee, for respondent.
O'CONNELL, Justice.
This is an original proceeding in mandamus brought by the petitioner, John P. Pedersen, seeking to compel the Comptroller to refund certain sales and use taxes alleged to have been unlawfully assessed and collected by the Comptroller from the petitioner.
Petitioner owns and operates a zoological park. Many animals are maintained for breeding and display purposes. No admission charge is made to the public but a fee is charged to those who choose to avail themselves of a transportation service offered by the petitioner in the park.
The animals feed upon large grazing meadows in the park. However, it sometimes becomes necessary for the petitioner to purchase supplemental food, including stale bread and prepared feeds, for his animals. He also finds it necessary to purchase fertilizers for the grazing meadows.
As a result of purchases of such supplemental food and fertilizer made by petitioner during the period from February 19, 1954 to November 29, 1955, the respondent assessed a tax against petitioner under the provisions of Chapter 212, Florida Statutes, 1955, Florida's Sales and Use Tax Law, F.S.A. The petitioner refused to pay the assessed tax, whereupon respondent caused a warrant to issue for such tax, penalties and interest. In order to prevent himself from being put out of business petitioner paid the sums demanded from him.
Petitioner was also taxed on purchases made between December 6, 1955 and April 16, 1957. Again the petitioner refused to pay until the respondent caused a warrant to be issued for such tax, penalties and interest.
Subsequently, the petitioner, under the provision of Sec. 215.26, F.S.A., applied for the return of these monies. The respondent refused to make the refund whereupon the petitioner prayed this Court to issue its writ of mandamus.
The petitioner first contends that he is not a registered dealer, he has not failed to make a tax report, and has not made a report with intent to deceive, therefore he says the respondent has no authority to make an assessment against him. He says that the only authority under which the Comptroller, respondent, may make assessments lies in Sec. 212.12(6) and 212. 14(1), F.S.A., and that since the facts of this case do not place him within the provisions thereof the respondent was without power to levy the assessments against him.
Admittedly the petitioner has not registered as a dealer under the Act, but this is not determinative of his responsibility to pay any tax lawfully assessed against him.
It is admitted by petitioner that he purchased and used the property taxed. He *3 does not contend that the tax has been paid thereon.
The authority of the respondent to assess and collect the tax, where lawfully assessed, from either the seller or from the buyer was settled adverse to petitioner's contention in Davis v. Ponte Vedra Club, Fla. 1955, 78 So.2d 858. As this Court said in that case on page 860:
"The fact that the State may proceed against the seller does not preclude the State from proceeding against the purchaser."
We therefore hold that the respondent had the authority to collect from the petitioner, as purchaser, any taxes properly assessed against the tangible personal property involved herein.
The petitioner next contends that the property taxed, i.e. stale bread, feed and fertilizer, are specifically exempted from taxation under the provisions of Sec. 212.08(1) and Sec. 212.08(4) (a), F.S. 1955, F.S.A.
We will treat the propriety of the tax on stale bread first.
Sec. 212.08, F.S. 1955, as it pertains to bread, reads as follows:
"* * * the following tangible personal property is hereby specifically exempt from the tax imposed by this chapter.
"(1) General groceries, including * * * bread, * * *."
Petitioner argues that the exemption of bread in Sec. 212.08(1), supra, is unconditional and the attempt of the respondent to limit the exemption according to use made of the bread is unreasonable, and too restrictive, and not within the plain meaning of the statute.
Unfortunately for the petitioner, the opinion of this Court in Green v. Stuckey's of Fanning Springs, Inc., Fla. 1958, 99 So.2d 867, has decided this point against his contention. There we said, on page 868:
"Construing the words `general groceries' as definitive of the food and drink items specifically listed in the statute, the Comptroller has interpreted the Act as exempting such items from the tax only when sold for the table and for household use * * *.
* * * * * *
"The interpretation made by the Comptroller is not `clearly erroneous'."
Accordingly, we do hold that the bread purchased and used by the petitioner as food for animals was not exempt from the tax.
Whether the "feeds" purchased and used by petitioner for feeding his animals were exempt under Sec. 212.08(4) (a), F.S. 1955 is the next question. The pertinent part of this section reads as follows:
"* * * (4) (a) * * * Other exemptions are * * * nets and ships used directly in and by licensed commercial fisheries, feeds, fertilizers, insecticides and fungicides used for application on crops or groves * * *." (Emphasis ours.)
To implement the statute the respondent adopted the following rule:
"Rule 50. Food for Animals
(1) Sales of food purchased for animals not kept for agricultural purposes are subject to the sales tax. For example: feed for race horses and all other horses not used for agricultural purposes, feed for dogs, cats, canaries, goldfish, circus and zoo animals."
There is nothing ambiguous in this section insofar as the use of the word "feeds" is concerned. There are no words in the subsection, or elsewhere in the statute, which to our knowledge restrict the exemption only to feeds used for agricultural animals. The words "used for application on crops and groves" cannot be reasonably construed to modify "feeds".
*4 As was held in Gasson v. Gay, Fla. 1950, 49 So.2d 525, 21 A.L.R.2d 412, words of common usage, when used in a statute, should be construed in their plain and ordinary sense. The plain and ordinary significance of the word "feeds" is not feeds for consumption of animals used only for agricultural purposes, but is "food, esp. for livestock; fodder. A food; a mixture or preparation used for feeding livestock." Webster's New International Dictionary (2nd ed.).
We must therefore hold that as used in the statute the word "feeds" meant "a mixture or preparation used for feeding livestock" and was not restricted to feed for agricultural animals. It follows that the provisions of Rule 50, above quoted, during the time involved herein, were not reasonable and not within the intendment of the statute in that they unduly restricted the exemption granted "feeds" by the statute. The relator is entitled to return of the taxes assessed and paid on such property.
We have not overlooked the fact that the 1957 Legislature in Sec. 212.08(6), Fla. Stats. 1957, F.S.A., amended Sec. 212.08(4), (a), Fla.Stats. 1955 insofar as here pertinent to read:
"There shall be exempt * * * feeds for raising poultry and livestock on farms and for feeding dairy cows; fertilizers, insecticides and fungicides used for application on crops or groves; * * *." (Words italicized were added by the amendment.)
Petitioner contends that this change was made in order to raise additional revenue through restricting the exemptions granted in the Act. He says this is expressly stated in Sec. 212.081(1) F.S. 1957, F.S.A., and therefore that the amendment cannot be taken to be an expression by the Legislature of the meaning or intent of the statute as it existed prior to the amendment.
Respondent contends, as he did in United States Gypsum Co. v. Green, Fla., ___ So.2d ___, that this amendment must be construed to be acquiescence by the Legislature in his construction of the statute, and as expressive of the legislative intent in enacting the statute as it existed prior to amendment. In support he cites Gay v. Canada Dry Bottling Co. of Fla., Inc., Fla. 1952, 59 So.2d 788, 790. Also see California School Township, Starke County v. Kellogg, 1941, 109 Ind. App. 117, 33 N.E.2d 363. He further calls our attention to the weight to be given his interpretation of the statute as discussed in Gay v. Canada Dry Bottling Co. of Fla., Inc., supra.
In the case now before us, the plain and ordinary meaning of the word "feeds" and the lack of expression elsewhere in the statute warranting a restriction on the exemption given "feeds", coupled with the statement of the Legislature that the amendments were made to raise additional revenue, Sec. 212.081(1), F.S. 1957, F.S.A., lead us to the conclusion that the amendment cannot be construed to be either a clarification of the statute or as expressive of the legislative intent in enacting the original statute, but rather was an amendment made to restrict the exemption on "feeds" in order to raise additional revenue.
It is true that the 1957 Legislature in Sec. 212.081(2) stated that the amendment was also made for the purpose of incorporating therein substantial rulings of the Comptroller. It is our opinion, however, that if a ruling of the Comptroller was not within the plain meaning of the statute, as we have held here, the amendment of the statute to include the effect of such a ruling cannot be construed to be a legislative declaration of the meaning of the former statute. It is rather an amendment which changes the meaning of the statute and cannot be made to be retroactive. It is true that the amendment indicates a willingness by the Legislature to accept the respondent's construction of the statute, nevertheless in a case such as this the amendment must operate prospectively, only.
*5 As to the tax on "fertilizers" we find ourselves in agreement with the respondent.
As we held above the word "feeds" could not be construed to be modified by the words "used for application on crops or groves", but it is not unreasonable to construe that these words modify fertilizers and thereby limit the exemption to fertilizers used for such purposes. Petitioner does not contend that he used the fertilizers involved herein for application on crops or groves, or for any of the purposes set forth in Respondent's Rule 1(7) quoted below.
In the amendment made by the 1957 Legislature, insofar as it relates to fertilizers, no new words were added. Only the punctuation was changed by adding a semi-colon before the word "fertilizers". Petitioner admits that the fertilizers used by him would be taxable under the statute as now written.
As to the exemption granted "fertilizers" by the 1955 statute we hold it to be ambiguous in that the exemption could be construed to be restricted to fertilizers used only on crops and groves. In such cases the general rule is that statutory exemptions from taxation are to be construed most strongly against the taxpayer. Green v. Pederson, Fla. 1957, 99 So.2d 292.
During the period involved herein the following pertinent rule, promulgated by respondent, was in effect:
"Rule 1 Specific Exemptions.
"* * * * * *
"(7) Fertilizer, including peat and topsoil, insecticides and fungicides used for application on crops, groves and home vegetable gardens or by commercial nurserymen are exempt. When used on lawns, shrubbery, ornamentals, flower gardens or for purposes other than the growing of vegetables and fruit for human consumption, these commodities are taxable."
In view of the ambiguity of the statute, coupled with the rule regarding construction of statutory exemptions against the taxpayer and the rule that the respondent's interpretation of the statute will be followed by the courts unless clearly erroneous, we conclude that the respondent's Rule 1(7) above quoted is not clearly erroneous and is not unreasonable. It follows that the petitioner cannot be relieved of the tax collected on fertilizers.
Accordingly the alternative writ of mandamus is quashed as to the tax, interest and penalties paid by petitioner on bread and fertilizers, but is made peremptory as to the tax, interest and penalties paid on "feeds".
It is so ordered.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.