442 So.2d 963 (1983)
Harry R. SCHMIDT and Virginia Schmidt, His Wife, Thomas B. Seamans and Jane P. Semans, His Wife, Edwin Groll and Delores S. Groll, His Wife, Gail G. Grant and Elizabeth Grant, His Wife, Appellants/Cross-Appellees,
v.
Charles H. SHERRILL and Dorothy P. Sherrill, Robert D. Edwards and Dorothy A. Edwards, Appellees/Cross-Appellants.
Charles H. SHERRILL and Dorothy P. Sherrill, Robert D. Edwards and Dorothy A. Edwards, Appellants,
v.
James R. POCKLINGTON and Virginia Pocklington, Appellees.
Nos. 82-189, 82-888.
District Court of Appeal of Florida, Fourth District.
September 7, 1983.
Rehearing Denied January 19, 1984.
*964 William F. Sullivan of Portley & Sullivan, Pompano Beach, for appellants/cross-appellees in No. 82-189 and for appellees in No. 82-888.
Robert L. Wunker of Grimditch, Bentz, Wunker & Thistle, P.A., Pompano Beach, for appellees/cross-appellants in No. 82-189 and appellants in No. 82-888.
HURLEY, Judge.
This consolidated appeal stems from two cases which involved the interpretation and enforcement of a declaration of condominium. We hold that the declaration was violated when various unit owners caused structural alterations to be made to the "outside walls" of the condominium, without first obtaining unanimous consent of all unit owners. Additionally, we hold that the trial court's finding of selective enforcement is unsupported by the record. Consequently, we affirm in part, reverse in part and remand with instructions.
The parties to these cases are apartment owners at Hillsboro Light Towers, a condominium located in Pompano Beach. The controversy centers on five sets of unit owners who partially enclosed their balconies with sliding glass windows. To achieve this result, each of the defendant unit owners (1) removed the exterior wall and window separating the kitchen area from the balcony, (2) enclosed a portion of the balcony by installing sliding glass windows on top of the existing balcony railing/wall, (3) extended the living room by removing the sliding glass doors and portions of the wall separating the living room from the balcony, and (4) enclosed the balcony by installing a new set of glass doors between the outer balcony railing/wall and the former living room wall.
Two actions were filed seeking mandatory injunctions for removal of the offending structures. The cases were tried before different judges and resulted in different judgments. The first court ruled that some, but not all, of the alterations violated *965 the declaration and had to be removed. The second court found that all of the alterations violated the declaration, but denied the request for a mandatory injunction, finding that the alterations did not affect the symmetry of the building and that their removal would constitute selective enforcement.
We begin our analysis with the declaration of condominium, the condominium's "constitution." Article VIII, Section "H", entitled "Alteration and Improvement" states that "[n]o apartment owner shall make any alterations in the portions of the apartment and apartment building which are to be maintained by the Association or remove any portion thereof or make any additions thereto ... without first obtaining the unanimous approval of all owners of other apartments in the same building... ." Article VIII, Section "G" is entitled "Maintenance." Among other things, it states that the condominium association shall maintain "the outside walls of the apartment building." Reading these provisions together, the declaration provides that a unit owner may not remove any portion of, or make any additions to, the outside walls of the apartment building without the unanimous consent of all other unit owners in the same building.
Whether they appear in a statute or in a declaration of condominium, words of common usage should be construed in their plain and ordinary sense. See, e.g., Pedersen v. Green, 105 So.2d 1 (Fla. 1958); Sterling Village Condominium, Inc. v. Breitenbach, 251 So.2d 685 (Fla. 4th DCA 1971). The critical words in this case are "the outside walls of the apartment building." During oral argument, counsel for the defendant unit owners conceded that the railing-like wall which circles the exterior of the balcony is an "outside wall." He contended, however, that the L-shaped wall which is exposed to the elements and which, on one side, separates the living room from the balcony and, on the other side, separates the kitchen from the balcony, is an "interior wall" because it is located on or within the balcony area. Although inventive, this definition is unrealistic, contorted and unworkable. Certainly, walls which are exposed to the elements are "outside walls." Furthermore, counsel's definition would destroy the visual integrity of the outside of the building for it would place the maintenance responsibility for the walls on each balcony in the hands of the individual unit owner. The term "outside walls" must be defined by its plain and ordinary meaning: all walls which are exposed to the elements and the outer surfaces of all walls which define the in-door living space of the condominium unit. Thus, the outside walls include the balcony railing/wall together with the L-shaped wall which separates the living room and kitchen from the balcony. This definition is consistent with the definition of "exterior building walls" which appears in Article VIII, Section "C" of the declaration under the title "Boundaries" and which states that "Exterior Building Walls ... include the unfinished surface of the exterior of the outside walls of the apartment building ... and when there is attached to the building a balcony ... such boundaries shall be the intersecting vertical planes adjacent to and which shall include all such structures and fixtures thereon." (Emphasis supplied.)
With the above definition in hand, it is immediately apparent that each of the structural alterations in this case involved the removal of, or an addition to, an "outside wall." Since these alterations were done without the unanimous consent of all of the unit owners in the building, they violate the declaration of condominium. We reached a similar conclusion in Sterling Village Condominium, Inc. v. Breitenbach, supra. There the unit owners glass-enclosed a screened porch without the consent of the association. The trial court denied a request for a mandatory injunction on the theory that the glass jalousies did not amount to a substantial alteration. We reversed, holding that the term "substantial alteration" had to be understood by its plain meaning. Also, we held that declarations of condominium must be strictly construed. See also Fountains of Palm *966 Beach Condominium, Inc. v. Farkas, 355 So.2d 163 (Fla. 4th DCA 1978). In the case at bar there can be no question but that the alterations are substantial. Consequently, they could be made only after full compliance with the declaration of condominium.
The trial court declined to issue a mandatory injunction against Mr. and Mrs. Pocklington on the theory that to do so would constitute a selective enforcement of the declaration's restrictions. The defense of selective enforcement received the supreme court's imprimatur in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979). White Egret involved a condominium association's attempt to enforce a residency restriction against children under the age of twelve. The court held that the association was estopped from enforcing the restriction against the Franklin family because the association had allowed at least six other children under the age of twelve to reside in the condominium complex. In the case at bar, Mr. and Mrs. Pocklington cannot cite other instances of glass-enclosed balconies because they were the first to undertake such action. Therefore, their defense of selective enforcement is based on two contentions: (1) that several unit owners have installed white hurricane shutters which, when extended, enclose the balcony area, and (2) that some unit owners utilize detachable, cloth sun-screens on their balconies. Neither of these conditions is sufficient to estop the association or any of its members from seeking legal redress to prevent the extensive structural alterations involved here. Hurricane shutters are commonly used throughout south Florida. They do not alter the configuration of the interior of the apartment and simply cannot be compared to the type of structural alterations undertaken by the defendant unit owners. Similarly, detachable cloth sun-screens are not comparable to permanent glass-enclosed balconies.
Accordingly, we hold that all of the structural alterations in these cases were done in violation of the declaration of condominium. Additionally, we hold that the record is devoid of competent substantial evidence to support the defense of selective enforcement.[1] Consequently, as to the amended final judgment entered in appellate case number 82-189, we affirm in part and reverse in part. Also, we remand with instructions to the trial court to enter a mandatory injunction requiring the removal of all alterations and the restoration of the balcony areas to their original condition. As for appellate case number 82-888, we also affirm in part and reverse in part and remand with instructions to enter a mandatory injunction requiring the removal of all structural alterations and the restoration of the balcony area to its original condition. Neither injunction, however, shall require the removal of hurricane shutters.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
ANSTEAD, C.J., and GLICKSTEIN, J., concur.
NOTES
[1] Some of the defendant unit owners have argued that, if reversed, the case should be remanded for further proceedings to determine whether the Sherrills are estopped from asserting their claim. We decline to follow this course because even if estoppel were established as to the Sherrills, it would not affect the Edwards' claim.