The Honorable Winston W. Gardner, Jr. Senator, District 17 862 Dixon Boulevard Cocoa, Florida 32922
Dear Senator Gardner:
You have asked for my opinion on substantially the following questions:
1. Is the use of a live animal in the training of racing greyhounds a violation of s. 828.122(3), F.S., or does the exemption contained in subsection (7) for recognized training techniques nullify the specific prohibition contained in subsection (3)? 2. Is the killing of an animal for the purpose of using its carcass in the training of racing greyhounds a violation of s. 828.12(1), F.S., which prohibits the "unnecessary killing of an animal"? 3. Is the use of a dead animal during the training of racing greyhounds a violation of s. 828.12(1), F.S., if the animal was killed specifically for this purpose?
In sum:
1. The use of a live animal to train racing greyhounds is a violation of ss. 828.122(3) and 828.12, F.S. 2. The killing of an animal for the purpose of using its carcass in the training of racing greyhounds is a violation of s. 828.12(1), F.S. 3. Nothing in s. 828.12(1), F.S., addresses the use to which a dead animal may be put.
As sponsor of amendments in 1986 to "The Animal Fighting Act," you have questions about the effectiveness of the act in light of a recent county court decision. Based on my response to your questions, I assume that you may introduce amendatory legislation relating to the issues of animal cruelty and animal fighting.
Initially, I would note that no comment is made as to the appropriateness of any court decision regarding application of these statutes. Lower court decisions are binding on the parties until overturned by an appellate court and may serve as precedent for adjudicating identical or similar cases which arise afterward.[1]
Question One
Section 828.122, F.S., "The Animal Fighting Act,"[2] provides that:
(3) Any person who commits any of the following acts is guilty of a felony of the third degree, punishable as provided in s.775.082, s. 775.083, or s. 775.084: (a) Baiting, or using any animal for the purpose of fighting or baiting any other animal. (b) Knowingly owning, managing, or operating any facility kept or used for the purpose of fighting or baiting any animal. (c) Promoting, staging, advertising, or charging any admission fee to a fight or baiting between two or more animals.
The term "baiting" is defined by the act to mean "the use of live animals in the training of racing greyhounds."[3] Thus, by its clear terms, s. 828.122, F.S., makes it a violation to use live animals in the training of racing greyhounds.
However, subsection (7) of the act states that "[n]othing in this section shall be construed to prohibit, impede, or otherwise interfere with recognized . . . training techniques or practices not otherwise specifically prohibited by law." Thus, nothing contained in s. 828.122, F.S., may be construed to prohibit recognized training techniques unless such activities are otherwise made illegal.
While this office possesses no authority or expertise to determine what constitutes a "recognized training technique or practice" within the greyhound racing industry, the Division of Pari-Mutuel Wagering designates the use of animals in the training of racing greyhounds a corrupt practice:
Any person licensed by the Division found guilty of using or permitting the use of rabbits, cats or fowls or other animals in the training of active racing greyhounds shall be fined or suspended or both by the Presiding Judge, who shall report all such cases to the Division.[4]
Thus, it would appear that the use of animals in the training of racing greyhounds is not a recognized training practice within this industry.
I would note that in 1973 this office determined that a trainer of greyhound racing dogs commits a crime in violation of s. 828.12, F.S.[5], if he or she hangs a live rabbit from a mechanism which moves around the track in front of the pursuing dogs until they catch up with and inflict pain or suffering upon the rabbit.[6] It was also determined in that opinion that a violation of the statute would occur if the trainer turns a live rabbit loose in front of starting boxes containing racing dogs and thereby entices them to leave the boxes and attack the rabbit and inflict pain or suffering upon it.[7] As this office stated, under each set of facts, the trainer violates s. 828.12, F.S., by causing the rabbit to be tortured and tormented, in that the trainer's actions cause the rabbit unnecessary pain and suffering. Thus, while subsection (7) states that recognized training techniques or practices are exempted as violations of s. 828.122, F.S., the use of live animals for training racing greyhounds does not fall within the exemption as it is designated a "corrupt practice" by the Division of Pari-Mutuel Wagering. Further, this practice is "otherwise specifically prohibited by law" pursuant to s. 828.12, F.S. Therefore, the use of live animals to train racing greyhounds is a violation of, and prosecutable under, both ss. 828.12 and 828.122, F.S.
Question Two
As discussed above, this office has stated that the use of a live rabbit in the training of greyhound racing dogs is a violation of s. 828.12, F.S., as such action causes the animal to be tortured and tormented, and causes unnecessary pain and suffering.
Section 828.12, F.S., provides in part that:
(1) A person who unnecessarily overloads, overdrives, torments, deprives of necessary sustenance or shelter, or unnecessarily or cruelly beats, mutilates, or kills any animal, or causes the same to be done, or carries in or upon any vehicle, or otherwise, any animal in a cruel or inhumane manner, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or by a fine or not more than $5,000, or both. (e.s.)
The term "unnecessarily" is not defined for purposes of the statute.[8] Words of common usage, when used in a statute, should be construed in their plain and ordinary sense.[9] "Unnecessarily" is defined to mean: "not by necessity"[10]; "[a] comprehensive term, meaning without necessity, needlessly, or uselessly; outside the usual course of business pertaining to the subject."[11]
In light of the above and my conclusion in Question One, the killing of an animal for the purpose of training racing greyhounds would appear to be needless and outside the usual course of business for this industry and would constitute an unnecessary killing in violation of s. 828.12(1), F.S.
Question Three
Section 828.12(1), F.S., makes it a crime for any person to unnecessarily overload, overdrive, torment, deprive of necessary sustenance or shelter, or unnecessarily or cruelly beat, mutilate, or kill any animal. The term "animal" is defined for purposes of Ch. 828, F.S., as "every living dumb creature."[12] Thus, a dead animal would not appear to come within the scope of statutes prohibiting cruelty to "animals."
I have concluded above that the use of a live animal in the training of racing greyhounds is a violation of ss. 828.12 and828.122, F.S., and that the killing of an animal for such purposes is also a violation of s. 828.12, F.S. However, nothing in either of these statutes appears to address the uses to which dead animals may be put. The Attorney General has no authority to supply additional words to or modify the meaning of a duly enacted statute.[13]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, 21 C.J.S. Courts ss. 186, 196, and 197.
[2] The statute is so designated by s. 828.122(1), F.S.
[3] Section 828.122(2)(a), F.S.
[4] Rule 7E-2.022(8), F.A.C. And see, Rule 7E-2.011, F.A.C., which provides for racing judges and their authority.
[5] While s. 828.12, F.S., has been amended since this opinion was rendered the changes would not effect the conclusion contained in AGO 73-211.
[6] Attorney General Opinion 73-211.
[7] Id.
[8] The Supreme Court of Florida, in Wilkerson v. State,401 So.2d 1110, 1112 (Fla. 1981), has determined that the term "unneces-sarily" as used in 828.12, F.S., is not unconstitutionally vague. The Court stated:
The particular words complained of, "unnecessarily or excessively" are not vague when considered in the context of the entire Statute and with a view to effectuating the purpose of the act. The fact that specific acts of chastisement are not enumerated, an impossible task at best, does not render the statutory standard void for vagueness. Criminal laws are not "vague" simply because the conduct prohibited is described in general language.
[9] Pedersen v. Green, 105 So.2d 1, 4 (Fla. 1958).
[10] Webster's Third New International Dictionary 2504 (unabridged ed. 1981). And see, The American Heritage Dictionary 1403 (New College ed. 1979).
[11] 91 C.J.S. Unnecessarily 504.
[12] Section 828.02, F.S.