Mr. David G. Tucker Escambia County Attorney 14 West Government Street Room 411 Pensacola, Florida 32501
Dear Mr. Tucker:
You ask substantially the following questions:
1. Is Escambia County, following discovery of an error regarding the number of allowable residential dwelling units in the county's 1993 Comprehensive Plan, required to correct the error by amending the comprehensive plan or may the county issue development orders based on an administrative interpretation of the correct number of allowable residential dwelling units?
2. Is section 163.3194(1)(a) or section 163.3231, Florida Statutes, violated if the county issues additional building permits when the number of residential dwelling units exceeds the maximum number of such units allowed in the comprehensive plan if that number was based on erroneous information regarding the number of units in existence at the time the comprehensive plan was adopted?
In sum:
Any action taken by the county to change the number of allowable dwelling units in the MU-4 category of the county's comprehensive plan must be by amendment of the comprehensive plan in accordance with the procedures prescribed in Chapter 163, Florida Statutes.
As your questions are interrelated, they will be answered together.
According to your letter, the Escambia County Board of County Commissioners enacted the Comprehensive Plan for Escambia County on October 20, 1993.[1] The plan provides that the average densities described in Policy 7.A.4.7 constitute "caps or thresholds on the level of new development activity in each category wherein such average densities or area-wide allocations are established. . . ."[2] The MU-4 category in Policy 7.A.4.7 caps the maximum number of residential dwelling units located in the Perdido Key area at 1,844.
You state that recent information indicates that the actual number of residential dwelling units in that area has been exceeded and may have been exceeded at the time of enactment of the comprehensive plan. According to your letter, the error is reported to have resulted from a miscalculation by a planning consultant regarding the number of existing dwelling units in the Perdido Key area at the time the comprehensive plan was prepared.
It is the intent of the comprehensive planning act that no public or private development be permitted except in conformity with comprehensive plans, or elements or portions thereof, prepared and adopted in conformity with this act. For example, section163.3194, Florida Statutes, which establishes the legal status of the comprehensive plan, provides in subsection (1)(a):
After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted.
Section 163.3231, Florida Statutes, requires that development agreements and authorized development "shall be consistent with the local government's comprehensive plan and land development regulations."
The definitions of the terms "development," "development order," and "development permit" in the statutes make it clear, as this office recognized in Attorney General Opinion 79-88, that "the coverage of the Local Government Comprehensive Planning Act includes the issuance of building permits for construction and any construction undertaken within the jurisdictional boundaries of the [local government]."[3] As provided in section 163.3194, Florida Statutes, all land development regulations enacted or amended must be consistent with the comprehensive plan. Land development regulations include all county zoning and subdivision, building and construction regulations controlling the development of land.[4] Accordingly, permits for the construction and use of property issued by a county must be in accordance with the comprehensive land use plan.
Section 163.3189(1), Florida Statutes, provides that:
The procedure for amendment of an adopted comprehensive plan or plan element which has been found to be in compliance shall be solely as prescribed by this section. (e.s.)
When the Legislature has prescribed how a thing must be done, that method must be observed. When the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way.[5]
While the statute does not define the term "solely," it is the rule that words of common usage, when used in a statute, should be construed in their plain and ordinary sense.[6] "Solely" has been defined as "without another: singly[;] to the exclusion of all else[.]"[7] The term "sole" means "single; only[.]"[8] The Legislature's use of the term "solely" to apply to the amendment of an adopted comprehensive plan would mandate use of section163.3189, Florida Statutes, to the exclusion of any other method. Thus, this office stated in Attorney General Opinion 95-32 that a city, despite its broad home rule powers, did not have the authority to act in a manner other than that prescribed in Chapter 163, Florida Statutes, in amending or altering its comprehensive plan.
Given the significance of such a change and the Legislature's intent that changes to adopted comprehensive plans be done in conformance with the provisions of Chapter 163, Florida Statutes, it is my opinion that any action taken by Escambia County to change the number of allowable dwelling units in the MU-4 category must be by amendment of the comprehensive plan in accordance with the procedures prescribed in Chapter 163, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Escambia County Ordinance 93-20.
[2] Policy 7.A.4.9 of the Escambia County Comprehensive Plan.
[3] See, s. 163.3164(6), (7), and (8), Fla. Stat.
[4] Section 163.3194(1)(b), Fla. Stat.
[5] Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944). And see, Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[6] Pedersen v. Green, 105 So.2d 1, 4 (Fla. 1958). See also, State v. Egan, 287 So.2d 1, 4 (Fla. 1973); Gasson v. Gay,49 So.2d 525, 526 (Fla. 1950).
[7] Webster's New Collegiate Dictionary 1106 (1975).
[8] American Heritage Dictionary 650 (1983).