DECISION AND JUDGMENT ENTRY
This case is before the court following the February 28, 2000 and July 7, 2000 judgments of the Wood County Court of Common Pleas granting Huntington National Bank ("HNB"), as successor trustee of eighteen trusts the corpus of which was thirty-nine shares of Haines City Mobile Park and Sales, Inc. stock, permission to sell the assets of the trusts. The court determined that HNB was first required, pursuant to a stock transfer restriction, to offer the shares of stock to Haines City.
This case had a long and convoluted history. To avoid confusion, we shall only refer to the facts necessary for resolution of the issues before us.
In Florida in 1980, Earl Maurer created eighteen separate trusts which were identical except for the beneficiaries, Earl Maurer's then living grandchildren, step-grandchildren or step great-grandchildren. The co-trustees were Robert Maurer and James Maurer, Earl Maurer's sons. The trusts were originally funded by 8.964 shares of stock in a closely held Florida corporation, Haines City Mobile Park and Sales, Inc. ("Haines City"). The trusts were funded with additional shares culminating in the trusts collectively owning thirty-nine of the 63.79 shares of Haines City stock. Appellees own a majority of the remaining shares.
Each trust provides that the trust extends until twenty-one years after the death of the beneficiary, at which time the corpus of the trust would go to the heirs. The income from the corpus of the trust was to be used for the education of the beneficiary.
On February 21, 1995, the complaint in the instant case was filed. Trustee James Maurer and various trust beneficiaries requested that the trial court declare the validity of the trusts and that the trustees have the right to exercise voting privileges associated therewith. The complaint further requested that Robert Maurer be removed as co-trustee and that the remaining shareholders/directors/officers be required to pay damages based upon their fraudulent operation of Haines City.[1]
On April 15, 1997, the trial court determined that the trusts were valid and enforceable. The court further found that trustees James and Robert Maurer appeared to be in conflict as to the administration of the trusts and, thus, the court removed them as trustees.
On July 3, 1997, appellants filed a motion for appointment of Huntington National Bank ("HNB") as successor trustee. Appellees opposed the appointment of HNB and requested that the court hold a hearing on the issue. On September 25, 1997, the court appointed HNB as successor trustee; HNB notified the court of its acceptance on May 19, 1998. Included in HNB's notice of acceptance was a memorandum advising the court that sale of the trust assets, in order to diversify the beneficiaries' investment, was its recommendation.
On July 8, 1999, HNB filed a request for instructions regarding the sale of the shares of stock. HNB explained that the sale was necessary because a large portion of the shares were includable in Mr. Maurer's estate for federal tax purposes and the tax had not been paid. HNB proposed that any party wishing to purchase the Haines City shares submit a written offer by July 26, 1999. HNB would then inform the parties, by August 9, 1999, of each offer it received and any it intended to accept. Appellants opposed the request arguing that a successor trustee should not be permitted to take such an irrevocable action. Appellants further argued that the shares were good investments and should not be sold.
On September 13, 1999, HNB filed with the court an application for authority to sell the trust property. HNB wished to sell the shares to appellant, James Maurer, at a price of $40,000 for each of the thirty-nine shares for a total of $1,560,000. Maurer's offer, made on August 25, 1999, was higher than the $37,000 per share offer of appellees Gary and Karen Wulff. A hearing was held on the application on September 21, 1999.
Appellee, Haines City, on October 22, 1999 and pursuant to the September 17, 1999 resolution by the board of directors, gave notice of its intent to exercise its right to repurchase the stock, for $40,000 per share, pursuant to the articles of incorporation of Haines City and the endorsements on the stock certificates.
On November 15, 1999, appellant, James Maurer, filed a motion opposing Haines City's attempt to acquire the shares. James Maurer essentially argued that Haines City waived the restriction and that it was unenforceable as to transactions between individual stockholders. Essentially, James Maurer argued that beginning in the summer of 1998, Haines City, through its directors and stockholders, intended to sell the corporation to the highest bidder without regard to the transfer restriction in the articles of incorporation. Appellees opposed the motion.
The trial court entered its judgment entry on the matter on February 28, 2000. The court granted HNB the authority to sell the shares of stock, but reserved judgment on whether Haines City was entitled to exercise its right of first refusal.
On March 28, 2000, Michael Maurer filed an appeal from the court's February 28, 2000 judgment. The appeal was subsequently dismissed as not being final and appealable.
In light of the trial court's February 28, 2000 judgment, James Maurer, on May 10, 2000, filed a motion to stay the effect, i.e. Haines City's likely exercise of its right of first refusal, of the decision relative to the sale of the shares of stock. James Maurer further filed a motion to enjoin the sale to the corporation. The motions were opposed.
On July 7, 2000, the trial court rendered its anticipated decision granting Haines City the authority to exercise its right of first refusal. The court determined that: (1) the stock transfer restriction was applicable; (2) Haines City neither generally waived not impliedly waived the stock transfer restriction; and (3) Haines City was not equitably estopped from enforcing the stock transfer restriction. On that date, the trial court denied James Maurer's motion for stay and motion to enjoin the sale of the stock.
On July 7, 2000, appellant, James Maurer, filed a notice of appeal as to the July 7, 2000 judgments. James Maurer also filed a motion for stay pending appeal.
Appellants, Michael, Karen and Anne Maurer, filed their notice of appeal on August 7, 2000. Their appeal was from the court's judgment entry of July 7, 2000. Michael, Karen and Anne Maurer were later granted leave to amend their appeal to include the trial court's July 7, 2000 judgment denying appellant James Maurer's motion for stay and motion to enjoin.[2][3]
Appellants now raise the same two assignments of error;[4]
therefore, we shall quote verbatim only appellant James Maurer's:
 "7. The trial court erred and abused its discretion in permitting Defendant-Appellee Haines City to exercise its claimed right to purchase the 39 shares of stock constituting the corpus of the eighteen Florida trusts.
 "8. The trial court erred in denying the motion of Appellant James Maurer for stay of execution of the order authorizing the directors of Appellee Haines City to purchase the 39 shares of stock which Appellee Huntington National Bank claimed to hold pursuant to its claim to be sole successor trustee of the eighteen trusts."
 I. STANDARD OF REVIEW
In their answer brief, appellees, Robert and Patricia Maurer, contend that the proper standard of review of the present appeal is abuse of discretion. Appellees acknowledge that questions of law are customarily reviewed under a de novo standard, while questions of fact are given the more deferential abuse of discretion standard. However, appellees propound that because the trial court was acting as a court of equity in determining issues relative to the administration of the trusts, its rulings, in toto, should be accorded a more deferential standard of review. Upon review of the cases cited by appellees and independent review of pertinent case law, this court declines to apply such a deferential review to questions of law. Instead, we shall apply traditional principles of review, deferring to the court's factual findings, while reviewing, de novo, the court's application of said findings to legal principles.
 II. ASSIGNMENTS OF ERROR
We now turn to appellants'[5] seventh assignment of error in which they contend that the trial court erred when it determined that Haines City was entitled to exercise its preemptive right to purchase the shares of stock constituting the corpus of the eighteen trusts. Appellants claim that the Haines City directors knew of HNB's desire to sell the shares of stock as early as 1998, and, thus, the October 22, 1999 notice of Haines City's election to exercise its right was beyond the ninety-day limitation and, therefore, untimely.
At the September 21, 1999 hearing on HNB's application to sell the stock, Ronald Gerseny, senior trust officer at HNB, testified that he serves as successor trustee of the eighteen Maurer trusts. Gerseny testified that he first began looking into the possibility of selling the trust assets in early 1998.
When questioned about the transfer restriction in the articles of incorporation, Gerseny acknowledged that he was aware that the transfer restriction existed. Gerseny stated that even if the sale was approved by the court, he had planned on presenting the shares of stock to the board of directors prior to its consummation.
During recross-examination Gerseny was questioned regarding the August 12, 1998 resolution of the Haines City board of directors of their "`intent to sell'" the mobile home park. Gerseny admitted that the resolution makes no mention of the transfer restriction and provides that the park was to be sold "to the highest and best bidder[.]"
Gerseny was also asked to review a copy of the minutes from the October 16, 1998 shareholders meeting during which the shareholders voted to go forward with the sale of the stock. He acknowledged that there was no discussion as to the transfer restriction. Gerseny did, however, state that appellant, James Maurer, conditioned his bid on the assumption that transfer restriction in the articles of incorporation would be addressed.[6]
We shall first address appellants' argument that the share transfer restriction should not be applied to share transfers within a closely held corporation. Appellant James Maurer acknowledges that transfer restrictions are not unreasonable as applied to potential transfer to parties outside a close corporation; however, he contends that transfers within a corporation do not trigger the same concerns and, thus, absent an express provision which applies to transfers between stockholders, the restriction is inapplicable.
Appellees counter that the trial court properly rejected the "strict construction" method of interpreting share transfer restrictions and followed the modern trend which affords transfer restrictions their plain meaning rather than creating exceptions not explicitly enumerated.
The validity of a share transfer restriction is governed by the law of the state of incorporation. 12 Fletcher Cyclopedia of Corporations (Rev. 1996), Section 5456. Fla. Stat. 607.0627 permits share transfer restrictions if they are set forth in, inter alia, the articles of incorporation and listed on the share certificate. Fla. Stat.607.0627(3) expressly authorizes transfer restrictions under the following circumstances:
 "(a) To maintain the corporation's status when it is dependent on the number or identity of its shareholders;
 "(b) To preserve exemptions under federal or state securities law; or
"(c) For any other reasonable purpose."
A careful review of Florida law reveals that the issue of the applicability of transfer restrictions as to "insider" dealings has not been addressed. Florida Jurisprudence 2d (1996) 642-643, Business Relationships, Section 208, explains the evolution of the stock transfer restriction in Florida as follows:
 "The common law rule is that generally, in the absence of an agreement, a corporation has no power to prevent its stockholders from alienating their stock, the rationale being that free alienability of stock is essential to the prosperity of the corporation and the value of its stock, in addition to being in the interest of the stockholders who may wish to change investments; however, the common law rule has more recently been modified so that although corporate stock may be subject to unreasonable restraints on alienation, restrictions on the transfer of corporate stock will be sustained if reasonable and if the stockholder acquires the stock with notice of the restriction."
We agree, as appellants' argue, that the most likely purpose for share transfer restrictions in close corporations is to prevent outsiders from purchasing shares and potentially damaging the company. However, in the present case we cannot say that requiring a shareholder to offer the shares to the corporation prior to selling to another shareholder is unreasonable. Had that been the intent of the restriction, it could have been explicitly set forth. Moreover, appellant, James Maurer, acknowledged the existence of the share transfer restriction in his August 25, 1999 bid. Accordingly, absent clear directive from Florida statutory and case law, we find that the share transfer restriction in the Haines City articles of incorporation is applicable to the proposed sale by HNB to appellant, James Maurer.
We next turn to the disputed provisions contained in the articles of incorporation and on the stock certificates. The articles of incorporation provide, in part:
 "In the event that a stockholder, by which terms is included the executors, administrators, heirs, legatees, and the nominee or personal representative of any stockholder, shall desire to sell, assign, give or transfer, any stock or share of stock in the corporation, such stockholder must by giving written notice of such desire to a majority of the Board of Directors, first afford to the corporation or the nominee of the Board of Directors, the right and privilege for ninety (90) days to purchase the same at a price agreed upon in writing between such stockholders and the corporation or such nominee, or in default of such agreement, at a price equal to the book value of said stock, and no stock of the corporation shall be transferred upon its books unless the foregoing provision has been completed and any attempt to transfer such stock in any other manner will be void."
The stock certificates provide:
 "Additionally, the shares represented by the certificate may not be sold without first being offered to a nominee of the corporation."
In its July 7, 2000 judgment entry, the trial court rejected appellants' argument that HNB desired to sell the corporation in 1998 and, thus, Haines City's October 22, 1999 notice of election to exercise its preemptive right was untimely. The court reasoned that if it afforded the restriction the interpretation that appellants were advocating, it would require the corporation to act whenever a stockholder suggested selling his or her stock.
Articles of incorporation are subject to basic rules of construction.Koplowitz v. Imperial Towers Condominium, Inc. (Fla.App. 1985),478 So.2d 504, 505. "`[W]ords of common usage should be construed in their plain and ordinary sense.'" Id., quoting Schmidt v. Sherrill
(Fla.App. 1983), 442 So.2d 963, 965.
Florida courts have well established that the construction of a written instrument is a question of law that is reviewable de novo, unless its meaning is ambiguous. Dixon v. Jacksonville (Fla.App. 2000),774 So.2d 763, 765. Where there is ambiguity in the instrument, the trial court's interpretation of the instrument will be affirmed if supported by competent substantial evidence. Dinallo v. Gunster,Yoakly, Valdes-Fauli Stewart, P.A. (Fla.App. 2000), 768 So.2d 468,471.
In the present case, we have carefully reviewed the language of the articles of incorporation. The trial court properly determined that the share transfer restriction is triggered by a "desire to sell," coupled with notice to the board of directors. We, however, further find that the "desires to sell" language in the articles is ambiguous and its meaning cannot be gleaned from the remainder of the restriction. Appellants contend that the phrase means that they simply intend to sell while appellees propound that the disputed language is limited to cases involving a specific offer and purchaser.
Because we find that the language is ambiguous, the trial court's ruling should be sustained if it is supported by competent substantial evidence. Dinallo, supra. This case has been before the trial court since 1995. The court has been involved in appointment of the successor trustee and all proceedings relative to the sale of the shares of stock. Mindful of these facts and based upon our examination of the record and relevant law, we conclude that the trial court's July 7, 2000 judgment, finding that Haines City's October 22, 1999 notice of its intent to exercise its preemptive right to purchase the shares was proper and timely, is supported by substantial and competent evidence. Accordingly, appellants' seventh assignment of error is not well-taken.
In appellants' eighth assignment of error, they contend that the trial court erred by denying appellant James Maurer's motion for stay of execution of the order. Based upon our disposition of appellants' seventh assignment of error, we find the assigned error moot.
 III. CONCLUSION
On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. The case is remanded for further proceedings consistent with this decision. Court costs of this appeal are equally assessed to appellants.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] Below is a list of the children and grandchildren (included on the trust documents) of Earl Maurer and their status as plaintiff or defendant in the trial court and their status, if any, before this court.
 Earl Maurer (deceased) CHILDREN 1. Robert Maurer: (co-trustee) defendant-appellee Patricia Maurer: (wife) defendant/appellee Ken Maurer Beth Maurer
 2. James Maurer: (co-trustee) plaintiff/appellant Michael Maurer: plaintiff/appellant Karen Maurer: plaintiff/appellant Ann Maurer: plaintiff/appellant
 3. Ronald Maurer: defendant/appellee Leila Maurer: (wife) defendant/appellee Jeremy Maurer Kelly Sloan (stepson)
 4. Janet Dauterman: defendant/appellee Dudley Dauterman: (husband) defendant/appellee Dana Dauterman Denise Dauterman Devin Dauterman
 5. Karen "Jane" Wulff: defendant/appellee Gary Wulff: (husband): defendant/appellee Kristy Wulff Tricia Wulff Tony Wulff
 6. Naomi Furbee (stepdaughter) Donna Hanneman Reggie Hanneman (step-great grandchild) Michelle Hanneman (step-great grandchild) Valerie Reynolds Dan Pfouts
[2] Though separate appeals were filed, this court denied appellant James Maurer's motion to bifurcate.
[3] On May 2, 2001, this court denied appellees' motion to dismiss the appeals due to lack of a final and appealable order. We found that the proceedings relative to the sale of the stock were provisional remedies which, if the orders relative thereto were not timely appealed, would prevent a judgment in favor of appellants and deny them an effective remedy. See R.C. 2505.02(B)(4).
[4] Assignments of error one through six were stricken by this court because they pertained to matters outside the scope of the February 28, 2000 and July 7, 2000 judgment entries.
[5] When using the collective terms "appellants" and "appellees," we are referring both groups of appellants as well as appellees which have filed separate briefs.
[6] Admitted into evidence at the September 21, 1999 hearing was a copy of James Maurer's August 25, 1999 bid. The bid states, in relevant part:
 "(c) Purchaser is making his offer premised upon the assumption that the buy-sell restrictions contained in the Articles of Incorporation either have or will be satisfied, waived or considered null and void so that the same have no impact on the consummation of the proposed transaction. If his assumption is not correct, then appropriate action to satisfy those restrictions will be required in order to consummate the proposed transaction."