IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

LEXINGTON PLACE CONDOMINIUM
ASSOCIATION, INC., A FLORIDA
CORPORATION NOT FOR PROFIT,

      Appellant,

 v.

                                    Case No.  5D21-2644
                                      LT Case No. 2020-CA-3981-O

MICHELLE FLINT AND KEVIN FLINT,

      Appellees.

_____/

Opinion filed June 24, 2022

Appeal from the Circuit Court
for Orange County,
Reginald K. Whitehead, Judge.

James E. Olsen, of The Law Offices
of John L. Di Masi, Orlando, for
Appellant.

Karen S. Cox and Michelle T.
Reiss, of Appletone Reiss, PLLC,
Tampa, for Appellees.


EDWARDS, J.

Without conducting a vote of the owners, Appellant, Lexington Place Condominium Association, Inc. ("Association"), through its Board of Directors ("Board"), made material alterations to the common elements by eliminating an existing dog park and a wallyball court. The Board also enacted a new rule restricting tenants' rights to have pets that conflicted with an express provision of the Declaration of Condominium ("Declaration"). Appellees, Michelle and Kevin Flint ("Flints"), own several units at Lexington Place, and their challenge to the material alterations and new rule was successful during non-binding arbitration. The Association sought review of the arbitration decision by pursuing a trial de novo in circuit court. The circuit court ruled in favor of the Flints and affirmed the arbitration award. We agree with the arbitrator and trial court that the Board ignored clearly relevant and controlling provisions of the Declaration. The Board lacked authority to make the material alterations to common elements or enact the new restrictive pet rule absent sufficiently favorable votes of the unit owners. Accordingly, for the reasons set forth below, we affirm the final summary judgment the trial court entered in favor of the Flints, and we grant their motion for appellate attorney's fees.

<u>Material Alterations</u>

Following the Association and its Board's actions, the Flints promptly filed a Petition for Mandatory Non-Binding Arbitration with the Department of Business and Professional Regulation Division of Florida Condominiums, Timeshares and Mobile Homes ("DBPR") against the Association, alleging, inter alia, that the Association in 2019 had violated its governing documents by removing two common elements, the dog park and wallyball court,[1] without a vote of the unit owners. In February 2020, the DBPR arbitrator filed his Summary Final Order, which ruled in favor of the Flints. The Association filed a Motion for Rehearing And/Or Motion for Clarification, which was denied by the arbitrator. The Association then filed a complaint for trial de novo in circuit court in which it repeated the same arguments made to the arbitrator. The circuit court ruled in favor of the Flints and affirmed the arbitrator's decision.

From arbitration through appeal, the Association has argued that they were authorized to eliminate the dog park and wallyball court by Article 8 of the Declaration which states:

> 8.    Additions, Alterations, or Improvements by the Association.
> Whenever in the judgment of the Board of Directors, the Common Elements, the Association Property, or any part of

---

[1] Wallyball is volleyball played on a racquetball court where the players can hit the ball off of the walls. As noted by the Association, the removal of the wallyball court here involved removing the volleyball net from the racquetball court so the court could be used to play racquetball.

either, shall require capital additions, alterations or improvements (as distinguished from repairs and replacements) costing in excess of $100,000 in the aggregate in any calendar year, the Association may proceed with such additions, alterations or improvements only if the making of such additions, alterations or improvements shall have been approved by a majority of the Unit Owners represented at a meeting at which a quorum is attained.

On the other hand, the Flints have consistently argued that the Association and its Board's power to make material alterations to common elements was governed and restricted by Section 6.4 which states:

6.4 <u>Material Alterations or Substantial Additions</u>. The Association shall not make any material alterations or substantial additions to the Common Elements or to real property which is Association Property, without the approval of a majority of the voting interests of the Unit Owners.

"Except as otherwise provided in this section, there shall be no material alteration or substantial additions to the common elements or to real property which is association property, except in a manner provided in the declaration as originally recorded or as amended under the procedures provided therein." § 718.113(2)(a), Fla. Stat. (2019). "A declaration of condominium is 'the condominium's constitution.'" *Beachwood Villas Condo. v. Poor*, 448 So. 2d 1143, 1145 (Fla. 4th DCA 1984) (quoting *Schmidt v. Sherrill*, 442 So. 2d 963, 965 (Fla. 4th DCA 1984)).

The terms "material alteration" or "materially alter" in condominium declarations, when not otherwise defined, mean "to palpably or perceptively

4

vary or change the form, shape, elements, or specifications of a building [or common element] . . . in such a manner as to appreciably affect or influence its function, use, or appearance." *Sterling Vill. Condo., Inc. v. Breitenbach*, 251 So. 2d 685, 687 (Fla. 4th DCA 1971); *see also Tower House Condo., Inc. v. Millman*, 410 So. 2d 926, 928 (Fla. 3d DCA 1981). It is indisputable that elimination of the dog park and wallyball court were material alterations of then-existing common elements.

While Article 8 of the Declaration gives the Association and its Board certain authority to deal with day-to-day matters, subject to an annual dollar limit, it does not mention "material alterations." The Association's reliance upon *Lenzi v. Regency Tower Ass'n*, 250 So. 3d 103 (Fla. 4th DCA 2018), is misplaced. Regency Tower's declaration explicitly authorized its board of directors to make material alterations to common elements with no requirement of owner approval, while the Association's Declaration, specifically Section 6.4, explicitly requires a majority vote of owners prior to the material alteration of any common element. Thus, under the circumstances present here, the Association and its Board lacked authority to eliminate the dog park and wallyball court in the absence of the majority of owners voting their approval.

<u>Rule Restricting Pet Ownership by Tenants</u>

5

In their DBPR petition, the Flints also successfully challenged the Association and its Board's 2019 adoption of Rule IX which states:

**IX. PET RESTRICTIONS**

Notwithstanding the provisions of Section 17.4 of [the Declaration]. Tenant(s) or Occupant(s) are not permitted to maintain household pets in a Unit. Section 17.4 of [the Declaration] permits "Unit Owners" to maintain pets within a Unit, and subjects only 'Unit Owners" [sic] for the fines and penalties for violations of Section 17.4.

Any pets residing in units with a Tenant(s) or Occupant(s) at the time and date these rules are adopted, are considered "grandfathered" and not subject to the Pet restrictions herein. *Existing pets are grandfathered in as to that specific pet. The right to a pet is not grandfathered. If the specific pet ceases living, a new pet is not permitted.*

(emphasis added).

The Flints argued that Rule IX amounted to an unauthorized amendment of the Association's Declaration, specifically Section 17.4, which provides in pertinent part:

17.4 <u>Pets</u>. No more than two (2) housed pets (as may be defined and re-defined by the Association) shall be maintained in any Unit or and Limited Common Element appurtenant thereto.

Section 17.4 also restricted the maximum total weight of pets to an aggregate of eighty pounds, prohibited any commercial activity involving pets, and provided for removal of pets that were dangerous, noisy, or otherwise a

6

nuisance. Section 17.4 did not distinguish between owners versus tenants or other occupants when it came to pets.[2]

The Association and its Board's adoption of Rule IX amounted to an attempt to amend the existing pet ownership rights set forth in Section 17.4. Article 6 of the Declaration governs amendments to the Declaration and includes two separate provisions: one for amendments done by the association and one for amendments done by the Board. Under Section 6.1, two-thirds of the voting interests of the unit owners must vote in favor of the amendment to the Declaration when proposed by the association. Under Section 6.2, if the Board wishes to amend the Declaration, it can do so upon unanimous vote of all directors; however, the amendments can only relate to very limited topics: (1) mortgages, (2) requirements by any governmental authority, or (3) "provisions of this Declaration to any provisions of the [Florida Condominium Act] or any rule promulgated thereunder, or any other applicable statute or regulation now or hereafter adopted or amended."

It is undisputed the Board is authorized to enact rules and regulations, but that power is not unlimited. "Clearly, a condominium board may not adopt rules modifying the provisions of a declaration without proper amendment [of

---

[2] During oral argument, the Association withdrew its contrary and inaccurate assertion found in its reply brief that Section 17.4 "expressly limits the right of pet ownership exclusively to unit owners."

the declaration]." *Mohnani v. La Cancha Condo. Ass'n*, 590 So. 2d 36, 37–38 (Fla. 4th DCA 1991) (quoting *Gordon v. Palm Aire Country Club Condo. Ass'n*, 497 So. 2d 1284, 1285 (Fla. 4th DCA 1986)). However, that is exactly what the Board attempted to do by adopting Rule IX. Given that the requirements of Section 6.1 for amending the Declaration were not followed, and Section 6.2 was inapplicable, the Association and its Board lacked authority to adopt Rule IX.

## Conclusion

Accordingly, we affirm the trial court's final judgment that affirmed the arbitrator's decision and specifically ordered the Association to restore the dog park and wallyball court and further ordered the Association to immediately void, revoke, withdraw, and not enforce Rule IX.

## Flints' Motion for Appellate Attorney's Fees

Additionally, in accordance with section 718.303, Florida Statutes (2019), we grant the Flints' motion for reasonable attorney's fees as the prevailing party and remand for the trial court to conduct an evidentiary hearing to determine that amount. Further in accordance with that same statutory provision, we authorize the trial court to award any additional amounts that it determines to be necessary to reimburse the Flints for their

8

share of any assessments that may be levied by the Association to fund its expenses of the litigation.

AFFIRMED; REMANDED FOR DETERMINATION OF REASONABLE ATTORNEY'S FEES.

LAMBERT, C.J., and COHEN, J., concur.