**Alan KAUFMAN, Individually and d/b/a Center for Asthma & Allergy of Bronx and Westchester, Plaintiff,**

v.

**SWIRE PACIFIC HOLDINGS, INC., a Delaware corporation, Defendant.**

**Case No. 09–20160–CIV–KING.**

United States District Court,
S.D. Florida,
Miami Division.

Dec. 18, 2009.

Danielle N. Garno, Greenberg Traurig, Robert C. Josefsberg, Podhurst Orseck Josefsberg et al., Miami, FL, Juan Luis Quintana, Quintana & Associates, Coral Gables, FL, for Plaintiff.

Danielle N. Garno, Stephen James Binhak, Greenberg Traurig, Miami, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, Senior District Judge.

**THIS CAUSE** is before the Court upon Plaintiff Alan Kaufman and Defendant Swire Pacific's cross motions for summary judgment (D.E.# 48, 50) filed on October 15, 2009. The final pretrial conference was held for the above-styled case on November 13, 2009. At the pretrial conference, oral arguments on the cross motions for summary judgment were held on both motions. For the reasons stated herein, the Court grants Summary Judgment for Defendant, Swire Pacific.

### I. BACKGROUND

The facts as set forth in Plaintiff's Amended Complaint are as follows. Plaintiff Alan Kaufman ("Plaintiff") filed the above-styled action against Defendant Swire Pacific Holdings, Inc. ("Defendant") in Circuit Court of the 11th Circuit for Miami–Dade County, and it was removed to this Court on June 23, 2008. Plaintiff filed an Amended Complaint on January 28, 2009 (D.E.# 3). Plaintiff's Amended Complaint alleges that, on February 11, 2005, he entered into two identical pre-construction Purchase and Sale Agreements ("the Agreements") with Defendant for the sale of two condominium units (Am. Compl.¶ 11). The Agreement for Unit 1605 had a purchase price of $925,000.00 with an escrow deposit of $185,000.00 (Am. Compl.¶ 11). The Agreement for Unit 1905 had a purchase price of $940,000.00 with an escrow deposit of $188,000.00. (Am.Compl.¶ 11). Plaintiff deposited a total of $373,000.00 into escrow for the pur-

chase of the Units, and the deposits remain with the Defendant to date. (Am. Compl.¶ 14).

Plaintiff alleges that Defendant's sales materials, which were given to Plaintiff prior to executing the Agreements, included material misrepresentations as to the Units (Am.Compl.¶¶ 29, 43). Based on the alleged misrepresentations and adverse amendment Plaintiff's Amended Complaint alleges it is entitled to (a) recover two escrow deposits totaling $373,000 which were placed in escrow with Defendant's agent in accordance with two residential condominium purchase agreements entered into on or about February 11, 2005; (b) collect damages under Chapter 501 of the Florida Statutes; (c) rescind the Agreements under Florida Statutes 718.506,718.503 and 720.401; (d) collect damages and/or rescind the Agreements based on fraud in the inducement; and (e) obtain equitable relief, including without limitation, common law rescission.

Plaintiff's Amended Complaint asserts five (5) counts against Defendants. On June 24, 2009, the Court entered an Order Granting Defendant's Motion to Dismiss Count III and V of Plaintiff's Amended Complaint (D.E.# 23) with prejudice. On October 15, 2009, Defendant filed its Motion for Summary Judgment (D.E.# 50) on the remaining three counts. Likewise, Plaintiff filed its Motion for Summary Judgment (D.E.# 48) on Count I and IV. Count I is an action to rescind the Agreements; Count II is an action for fraud in the inducement; Count IV is an action for rescission of the two Agreements based on material and adverse amendment to the condominium documents.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the burden of pointing to the pan of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 645 (11th Cir.1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991) (holding that, to meet its burden, the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); however, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## III. ANALYSIS

In each of the three counts before the Court, the central claim Plaintiff raises is that Defendant built Plaintiff's apartments substantially smaller than it promised. Central to this Court's Order granting summary judgment for Defendant is that the apartments, as they stand today, were built as promised in the Agreements. The Plaintiff did not show that there were false or misleading promotional sales materials, nor that Plaintiff was induced to enter the Agreements under fraudulent terms. The evidence of record does not support Plaintiff's claim that Defendant delivered smaller apartments than it promised.

■ In Counts I and IV of Plaintiff's Amended Complaint, Plaintiff seeks to rescind both Agreements based on false and misleading advertising, and on a material and adverse amendment to the offering documents. Plaintiff's Amended Complaint alleges that, prior to entering into the Agreements to purchase the two condominium units, the Defendant "provided to the Plaintiff a sales brochure which included a layout sketch of the Units that depicted the units as having a unit size each of 1,600 sq. ft ... [and] a price list ... [which were] part of the Defendant's advertising and promotional materials for the Project...." (Am.Compl.¶ 19). In addition, the sales brochure included a price list showing the Units as having 1,600 square feet. Plaintiff states that despite the representations in the sales materials, the Units were built substantially smaller with a unit area of 1.326 square feet rather than 1,600 square feet, and that this represents a material and adverse discrepancy between the Units' total square footage as depicted in the Sales Materials and the Units' total square footage as built. Plaintiff further alleges that the Prospectus delivered to Plaintiff containing a chart showing the Units as having a percentage share of ownership of 0.518% in the common elements of the Condominium (the "Prospectus CEO Chart"), was also false and misleading, and turned out to be 0.4877% instead of the 0.518% which was originally listed.

Defendant argues that the apartments were built in accord with the Agreements, the condominium documents, and the sales materials. Defendant argues that the Layout Sketch included in the sales materials indicated that Plaintiff's apartments would be 1,600 sq. ft. The layout sketch also included an explanation of how the units were to be measured, which stated:

Not to scale. All dimensions are approximate and all floor plans and development plans are subject to change in accordance with the agreement for sale. Oral representations cannot be relied upon as correctly stating the representations of the developer. For correct representations make reference to the documents required by section 718.503 Florida Statutes to be furnished by developer to buyer or lessee. Stated dimensions are measured to the exterior boundaries of exterior walls, corridor walls and to the centerline of the demising walls and may vary from the description and definition of the "unit" set forth in the Declaration.

*See* Defendant's Exhibit "A". The existing apartments as they stand today, using the architectural method of measurement, measure 1,600 sq. ft. Defendant argues that there was no misrepresentation but rather two different methods of measuring the same space. Defendant contends that since the sales materials accurately described the apartments, and the as-built surveys confirmed that the apartments were built as promised, Counts I and IV for rescission should fail as a matter of law.

In Florida in order to state a cause of action for rescission under Fla. Stat.

718.506, a party must establish (1) a false or misleading statement; (2) the statement is published in promotional materials, (3) the statement was material; and (4) reasonable reliance on the statement. *See Garcia v. Santa Maria Resort, Inc.,* 528 F.Supp.2d 1283, 1295 (S.D.Fla.2007). Reliance must be justifiable for there to be actionable fraud. *See Hillcrest Pac. Corp. v. Yamamura,* 727 So.2d 1053, 1056(Fla. 4th DCA 1999); *Jankovich v. Bowen,* 844 F.Supp. 743, 747 (S.D.Fla.1994); *Weaver v. Opera Tower, LLC,* 2008 WL 4145520, at *2 (S.D.Fla. Aug. 1, 2008). It is well-settled under Florida law that a plaintiff's reliance on a defendant's alleged prior misrepresentations that contradict the express terms of a ensuing written agreement is unreasonable as a matter of law. *See Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments, Inc.,* 262 F.Supp.2d 1334, 1342 (S.D.Fla.1999); *Barnes v. Burger King Corp.,* 932 F.Supp. 1420, 1428 (S.D.Fla.1996).

After considering the extensive exhibits, affidavits, and pleadings in the instant case, the Court finds that as a matter of law Defendant did not make a statement that was false or misleading, or made any amendment to the offering documents, which substantially altered the Agreements. Although Plaintiff provides several theories in its Motion for Summary Judgment, only one is the basis of Count I in its Amended Complaint—whether Defendant built its apartments smaller than it originally promised. Since the Court finds that the apartments were built, as promised in the advertisements, it follows that the advertisements were not false. Plaintiff got what it bargained for: an apartment with 1,600 square feet.

The Court also finds that the sales materials were not misleading. In the final prospectus, Defendant used a different method which yielded 1,326 square feet. There were no errors in calculations, just two different approaches in the way square footage was calculated.[1] Defendant disclosed that it was using two methods of calculation, and described how the units were being calculated under each of the two methods.

 Furthermore, the Agreements contained multiple disclaimers advising the Plaintiff that, in signing the Agreements, he was relying only on the Agreements themselves. For instance, Plaintiff expressly acknowledged in Paragraph 14 that "buyer understands and agrees that there are various methods for calculating the square footage of a Unit, and that depending on the method of calculation, the quoted square footage of a Unit, and that depending on the method of calculation, the quoted square footage of the Unit may vary by more than a nominal amount." (Defendant's Mot. Summary Judgment 20). There are other provisions in the Agreements, which stated that the buyer did not rely on any of the advertising or sales materials. For example, in Paragraph 31, Plaintiff agreed "Buyer warrants that Buyer has not relied upon any verbal representations, advertising, portrayals or promises other than as expressly contained herein and I the Condominium Documents ..." (Defendant's Mot. Summary Judgment 21). In Paragraph 39 Plaintiff agrees "[a]ny current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement are void and have no effect.

---

1. In its Response to Defendant's Motion for Summary Judgment, Plaintiff refers to the affidavits of Joe Perea and Ralph Puig to dispute Defendant's methods of calculation. This Court's Order of October 9, 2009, struck these expert witnesses as improper for failure to timely disclose them as experts, or, the substance and basis for their testimony.

Buyer has not relied on them." (Defendant's Mot. Summary Judgment 21).

As a result, Plaintiff has not established reasonable reliance on the materials which Plaintiff claims were misleading. Florida law makes it clear that the Court must presume that Plaintiff knew and understood the provisions in the Agreements before he signed them. *Lopez v. Ernie Haire Ford, Inc.*, 974 So.2d 517, 519 (Fla. 2d DCA 2008) (a party has a duty to learn and know the contents of a proposed Agreements before the signs and delivers it and is presumed to know and understand its contents, terms, and conditions). At no point throughout the voluminous pleadings did Plaintiff allege that he misunderstood any of the provisions in the Agreements he signed. Therefore the Court can only assume that Plaintiff understood the Agreements, and proceeded in light of that knowledge. *Weaver v. Opera Tower, LLC*, 2008 WL 4145520, *2 (S.D.Fla. Aug. 1, 2008) (It is well-settled that a contracting party may not, as a matter of law, reasonably rely upon prior written or oral misrepresentations expressly contradicted by a subsequent written agreement); *Fed. Deposit Ins. Corp. v. High Tech Med. Sys., Inc.*, 574 So.2d 1121, 1123 (Fla. 4th DCA 2008) (written disclaimer in Agreements made reliance upon contrary information unreasonable as a matter of law).

In *Weaver*, the plaintiffs, also condominium buyers, were given written sales brochures containing alleged misrepresentations prior to executing written purchase agreements. *Id.* at *1. The court, in *Weaver*, held that the plaintiffs were unable to properly allege reasonable reliance because the representations made in the prior written advertising materials directly contradicted the language of the executed purchase agreements. *Id.* at *2. The court relied on the fact that, in the purchase agreements, "[p]laintiffs unequivocally agreed that the Brochure served a merely 'promotional' purpose, and furthermore, that the [condominium units] would be constructed pursuant to the express terms of the *Agreement*, rather than the Brochure or any other promotional material." *Id.*

Count IV of Plaintiff's Amended Complaint, sets forth the second reason why Plaintiff seeks to have the Agreements rescinded. In Count IV, Plaintiff states that there was an amendment which made a material change to the Condominium Offering.[2] Plaintiff alleges that after the Agreements were executed, Defendant filed with the Division an amendment to the Condominium Documents relating to this project. Plaintiff alleges that it timely sought to rescind the Agreements prior to the 15–day rescission period based on the material and adverse changes to the Prospectus by the Amendment.

Florida law allows a buyer to void a condominium purchase agreement if the developer makes a material and adverse change to the offering documents, Fla. Stat. 718.503(1)(a). In addition, Fla. Stat. 718.110(4) states:

> no amendment may change the configuration or size of any unit in any material fashion, materially alter or modify the appurtenances to the unit, or change the proportion or percentage by which the unit owner shares the common expenses of the condominium and owns the common surplus of the condominium unless the record owner of the unit ... approves the amendment.

---

2. In its Amended Complaint, Plaintiff only raises one allegedly adverse amendment, mainly the difference in size of the units. In its Motion for Summary Judgment (D.E.# 48) Plaintiff raises for the first time two other amendments which Plaintiff argues were also adverse, and warrant rescission.

*Id.* When determining whether an amendment is material or adverse, Florida Courts have applied an objective standard. In *D & T Props., Inc. v. Marina Grande Assocs., Ltd.,* 985 So.2d 43 (Fla. 4th DCA 2008), the Fourth District Court of Appeal held that:

> an objective test is appropriate to decide whether an amendment amounts to a "material" alteration or modification of an offering under section 718.503(1)(a)—would a reasonable buyer under the purchase agreement find the change to be so significant that it would alter the buyer's decision to enter into the Agreements?

*Id.* at 49. In *In re Paramount Lake Eola, L.P.,* 2009 WL 2525558 (M.D.Fla.2009), the Court found that the dimensions in the apartments as built did not change in any significant way from the marketing materials. As a result, the Court determined that Plaintiffs did not establish an adverse and material change which supported revoking their agreements under section 718.503 of the Florida Statutes. As in *Paramount,* there has been no change in the instant case, let alone an adverse change.

The Sales Materials and Agreements stated the apartments will be 1,600 sq. ft. The apartments, as they stand today were built with 1,600 sq. ft., as represented they would be in the sales materials. In 2006, after Plaintiff signed the Agreements, but before the closing, there was a change to the Florida administrative rules requiring:

> [a] deceleration of condominium in which percentage of ownership is not based upon an equal fractional basis shall include the square footage within each unit or unit type based on the permetrical boundaries ascribed to each unit or unit type or the dimensions of each unit as elsewhere provided in the deceleration of condominium or the survey or graphical description, as well as the total square footage of all units combined.

Fla. Admin. Code R. 61B–18.0051. Prior to the enactment of this rule, the Declaration did not have to provide the square footage of each apartment. Defendant complied with the new rule, providing both the architectural method (1,600 sq. ft.), and the permetrical measurement (1,326 sq. ft.) in the as-built survey. The explanation for the discrepancy is that Plaintiff was complying with a new rule, and used a different method of measurement, which leads to the number in the as-built survey. Plaintiff still received an apartment that was 1,600 sq. ft. as promised in the Agreements.

Even if the Court found that Defendant delivered a smaller apartment, Plaintiff's argument that he was justified in relying on the sales materials does not explain why he disregards the plain language of the Agreements which specifically state that a "buyer understands and agrees that there are various methods for calculating the square footage of a unit, and that depending on the method of calculation, the quotes square footage of the unit may vary by more than a nominal amount." (Defendant's Mot. Summary Judgment 20).

The remaining Count in Plaintiff's Amended Complaint, states a claim for Fraud in the Inducement. In Count II of Plaintiff's Amended Complaint, Plaintiff alleges that Defendant misrepresented to Plaintiff the size of the apartments, and its Common Elements Ownership Interest, and induced Plaintiff into signing the Agreements. Plaintiff further alleges that Defendant's sales staff made misleading representations or incomplete or fraudulent representations, or incomplete or fraudulent material omissions to Plaintiff as to the size of the Units as part of a plan and scheme to defraud and trick prospec-

tive purchasers into purchasing units within the project. The crux of Plaintiff's claim for fraud is that he received a smaller apartment than he expected when he signed the Agreements, and because there is a difference in size, Defendant's activities were therefore fraudulent.

■ To prevail on a claim for fraud in the inducement a party must prove that (1) a misrepresentation of material fact was made; (2) the party knew the misrepresentation was false; (3) the misrepresentation was intended to induce reliance; and (4) the party suffered injury based on justifiable reliance. *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985). To sufficiently allege a claim for fraud in the inducement, a plaintiff must allege the exact statements and alleged misrepresentations; the time and place of each such misrepresentation and who made it; the substance of the representations and how it misled the plaintiff; and the defendant's gain due to the alleged fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir.2007).

The Court finds that Plaintiff could not have reasonably relied on the alleged fraudulent representations. Moreover, Plaintiff cannot prove that it was injured because the decrease of his common ownership created a benefit for Plaintiff, not a detriment. With greater common ownership comes a larger share of the condominium's common expenses. Therefore, Plaintiff received a benefit by presumably having lower monthly fees, yet maintaining full enjoyment of all the condominium's common areas and amenities.

Based upon the factual allegations in the Amended Complaint, combined with the plain language in the agreements, the Court finds Plaintiff is unable to demonstrate reasonable reliance and therefore, unable to plead a sufficient cause of action for fraud in the inducement, or rescission under Fla. Stat. § 718.506. Accordingly,

after a careful review of the record and the Court being otherwise fully advised, it is

**ORDERED, ADJUDGED, and DE-CREED** that Defendant's Motion for Summary Judgment (D.E.# 50) be, and the same is hereby, **GRANTED,** and Plaintiff's Motion for Summary Judgment (D.E.# 48) be, and the same is hereby **DENIED** with prejudice. This Court retains jurisdiction for an adjudication of fees, costs, and expenses incurred by the prevailing parties.